[Civ. No. 66284. Second Dist., Div. Seven. May 11, 1983.]

SAMMY L. COLLIER, Plaintiff and Appellant, v.
CITY OF PASADENA et al., Defendants and Respondents.

## COUNSEL

Joseph Posner for Plaintiff and Appellant.

Evelynn M. Finn, City Attorney, Kegel, Tobin & Hamrick and Charles H. Carpenter for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—Two issues are presented in this case. The major question is whether filing a workers' compensation claim equitably tolls a statute of limitation for filing a disability pension claim arising out of the same disabling injury. The second issue is whether an action in the nature of administrative mandate is timely when filed more than three years after the administrative decision but less than three months after the petitioner became aware of that decision. In the circumstances of this case, we hold, first, the statute of limitations was equitably tolled on the disability pension claim and, secondly, the action to review the administrative decision denying that claim was timely.

## I. Summary of Facts[1] and Proceedings Below

Sammy Collier, then 24, was hired as a Pasadena fireman in October 1971. On that date he also automatically became a member of the Pasadena Fire and Police Retirement System. This system guaranteed Collier immediate pension protection for employment-related disabilities. Nearly four years later, on August 30, 1975, he was injured while fighting a fire in Pasadena. Within two months Collier filed a workers' compensation claim for employment-related disabilities suffered in the August 30 fire.

On January 16, 1976, Collier and Ernest Boerner, a lawyer hired to handle his workers' compensation claim, met with the Pasadena fire chief and a Pasadena deputy city attorney. These officials informed Collier the city intended to discharge him because he was no longer able to function as a fireman. There is nothing in the record to suggest the fire department offered him continued employment in a light duty assignment. Instead the fire chief advised Collier he was not entitled to a disability pension because he had not been employed long enough.[2] However, the fire chief did promise to send a letter to the retirement board advising it of Collier's termination.

Collier was terminated from the Pasadena Fire Department effective January 16, 1976. A copy of this termination letter was sent to the retirement board. Two months later the retirement board sent a pension application form to Collier. This form was silent as to when the application had to be filed. Nonetheless, Collier completed the form requesting a disability pension and turned it over to his lawyer, Boerner, on March 26, 1976. Boerner did not file the disability application at this time.

During the ensuing months, the city prepared its defense against the workers' compensation claim. The city contended Collier's disabilities, if any, were not related to his employment. Several medical doctors chosen by the city examined Collier. In addition, the city was supplied with the results of examinations by doctors treating Collier's physical and mental conditions.

On April 29, 1977, while the city was still contesting Collier's workers' compensation claim, the staff of the city's retirement board prepared a form purporting to request a refund of Collier's accumulated pension contributions. This

---

[1]Since this appeal is based on an order sustaining a demurrer, the allegations of the complaint and attached exhibits are assumed to be true. Many of the "facts" recited in this opinion will be subject to proof in later proceedings.

[2]This advice was erroneous. A Pasadena fireman with less than 10 years service would not be entitled to an ordinary disability pension. But no such limitation applied to a fireman whose disabilities were "incurred in the performance of duty." (Pasadena Mun. Code, § 2.54.210.)

form was never submitted to Collier nor signed by him. Instead it was "ratified" by the retirement board itself on May 9, 1977. Pursuant to this "request" a $5,291.57 check was mailed to Collier. He received the check but did not cash it. Rather his lawyer, Boerner, transmitted the disability pension application form to the city's retirement board on August 20, 1977.

Collier's pension application form was considered at a retirement board meeting September 12, 1977. Collier was not notified of the meeting. Nor was he advised of his right to present evidence or argument to the board. "On advice of the City Attorney" (whose office was still contesting Collier's workers' compensation claim at that time), the retirement board denied the disability pension claim "on the grounds that at the time of filing he was not a member of this system." The board's secretary was instructed to advise Collier of this action, but failed to do so then or later.

Over a year after the retirement board meeting, October 23, 1978, the workers' compensation case was finally concluded, some three years and two months after Collier's initial injury. This "Compromise and Release" resulted in a $22,000 payment to Collier, equivalent to a finding of 60 percent permanent disability. Collier's attorney, Boerner, died in January 1980. As of that time neither Collier nor his attorney had yet heard from the city's pension retirement board about its disposition of the disability pension claim.

Collier learned some months later of Boerner's death. He quickly retained a new lawyer, Joseph Posner, specifically to look into the disability pension claim. From April through July 1980, Posner sought to file a pension claim, first with the Public Employees Retirement System (PERS) and then with the Pasadena Fire and Police Retirement System. Ultimately, on July 30, 1980, the city attorney sent a letter denying Collier's claim. This rejection rested on the new defense that Collier's application had not been timely filed. A week later Posner was given access to the city's file on the Collier case. For the first time, he and Collier learned of the September 12, 1977, action of the retirement board rejecting Collier's disability application form.

Two and a half months after discovering the city had rejected Collier's application form, October 30, 1980, Posner filed a petition for peremptory writ of mandate against the City of Pasadena and its fire and police retirement system and board. On December 16, 1980, Pasadena's demurrer was sustained with leave to amend. On January 14, 1981, Collier filed a "First Amended" petition and complaint. This pleading added a claim for damages under 42 United States Code section 1983 to the request for writ of mandate. This amended pleading, in turn, was subjected to a demurrer from the City of Pasadena. On March 10, 1981, the court sustained the demurrer without leave to amend as to the petition for writ of mandate but without prejudice to asserting the damage claims in an

appropriate manner. On March 27, 1981, the "First Amended" petition was dismissed pursuant to the demurrer on the specific ground this petition "shows on its face that the action is barred by the statute set forth in Pasadena Municipal Code section 2.54.150, subdivision d, . . . ."

On April 15, 1981, Collier filed a timely notice of appeal in forma pauperis. Appellant's opening brief was filed on September 20, 1982. An application to extend time for filing respondent's brief was granted and that brief was received on January 3, 1983. Appellant's closing brief followed on January 19, 1983. The appeal was transferred to this division on February 9, 1983.

II. THE DOCTRINE OF EQUITABLE TOLLING APPLIES TO COLLIER'S DISABILITY PENSION CLAIM

Collier's own alleged facts reveal his lawyer did not file the application for disability pension until August 20, 1977. This date was nearly 2 years after the fire which caused his disabling conditions; 19 months after he was terminated from employment as a firefighter; and, nearly 17 months after he received the blank application form from the city. Pasadena ordinances require proceedings for disability pensions to be commenced within six months "from the date of the injury or illness or the date the right accrued."[3] These facts form the basis for the trial court's order sustaining a demurrer against Collier's petition for the express reason that "on its face" Collier's petition demonstrated he failed to file within the statutory period created by Pasadena's ordinance. However, "on its face" the complaint also alleges facts which raise the possibility Pasadena's statute of limitations was "equitably tolled" during the pendency of the workers' compensation proceeding.

We first briefly rehearse the evolution of the "equitable tolling" doctrine in California, including the three prerequisites currently required for invocation of the doctrine. We then apply this three-pronged test to Collier's interrelated claims for workers' compensation and disability pension from the City of Pasadena.

A. *The Prerequisites and Policies of the Doctrine of Equitable Tolling*

The "equitable tolling" doctrine is a recent innovation in California law. It evolved quickly and quietly during the 1970's out of other related rationales for tolling statutes of limitation. Yet the doctrine can be traced back at least to 1944 and a decision of the United States Supreme Court, *Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342 [88 L.Ed. 788, 64 S.Ct. 582]. In that case the court tolled the statute of limitations for a court action during the pendency

---

[3]Pasadena Municipal Code section 2.54.150 (D).

of a lengthy administrative proceeding over the same claim for wages. Twenty years later, in *Burnett* v. *New York Central R. Co.* (1965) 380 U.S. 424 [13 L.Ed.2d 941, 85 S.Ct. 1050] the Supreme Court first articulated a rationale for the doctrine, "Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so." (380 U.S. at p. 434 [13 L.Ed.2d at p. 949].)

The precursors of equitable tolling in California can be found in three lines of cases. Prior to the 1970's, statutes of limitation had been tolled when a plaintiff filed a case which promised to lessen the damages or other harm that might have to be remedied through a second case. The statute for the second case was tolled while the plaintiff pursued the first, presumably to further the public purpose of minimizing harm. (*County of Santa Clara* v. *Hayes Co.* (1954) 43 Cal.2d 615 [275 P.2d 456]; *Tu-Vu Drive-In Corp.* v. *Davies* (1967) 66 Cal.2d 435 [58 Cal.Rptr. 105, 426 P.2d 505].) Another line tolled statutes of limitation when administrative remedies had to be exhausted before a court would consider the case. (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800]; *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97].) Still a third line of cases tolled the limitation period of a second action during the pendency of a first action later found to be defective. (*Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Schneider* v. *Schimmels* (1967) 256 Cal.App.2d 366 [64 Cal.Rptr. 273].)

■ Starting in 1974, the California Supreme Court weaved these earlier lines of cases into a new, broader doctrine—"equitable tolling." This doctrine applies " '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " (*Elkins* v. *Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839], quoting *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 634 [86 Cal.Rptr. 198].) The new doctrine rested on a simpler rationale: a plaintiff should not be barred by a statute of limitations unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed. As Justice Tobriner stated in the leading case of *Elkins* v. *Derby,* "[T]he primary purpose of the statute of limitations is normally satisfied when the defendant receives timely notification of the first of two proceedings." (12 Cal.3d at p. 417, fn. 3.)

In *Elkins,* the California Supreme Court tolled the statute of limitations for tort actions against employers while injured workers pursued their workers' compensation claims arising out of the same accidents. In succeeding cases, the Supreme Court approved tolling state court actions against government agencies while plaintiffs unsuccessfully sought alternative relief in the federal courts for the same injuries. (*Addison* v. *State of California* (1978) 21 Cal.3d 313 [146

Cal.Rptr. 224, 578 P.2d 941]; *Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99 [165 Cal.Rptr. 100, 611 P.2d 441].) Meantime, Courts of Appeal have further expanded the doctrine. In *Nichols* v. *Canoga Industries* (1978) 83 Cal.App.3d 956 [148 Cal.Rptr. 459], a state action was equitably tolled during the pendency of a federal action even though the remedies were not inconsistent and could have been pursued simultaneously. And, of special relevance to Collier's situation, in *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670 [138 Cal.Rptr. 338], the Second District tolled a claim for supplemental disability benefits during the pendency of a related workers' compensation claim. However, the supplemental benefit claim in *Baillargeon* was based on equitable estoppel and entirely dependent upon a favorable outcome in the workers' compensation proceeding. Hence the issue posed by Collier's two claims was not entirely resolved by that decision.

In order to determine whether equitable tolling saves Collier's disability benefit claim, we find it necessary to dig deeper into the prerequisites and rationale of that doctrine.

In *Addison* v. *State of California, supra,* 21 Cal.3d at page 319, Justice Richardson mentioned three factors considered in deciding whether "equitable tolling" should be applied in that case. Subsequent Court of Appeal decisions have treated Justice Richardson's words to have created a definitive three-pronged test for invocation of this doctrine.[4] ■ These three-core elements are: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.[5]

The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second. As an example, a workers' compensation claim equitably tolls a personal injury action against that same employer for injuries sustained in the same incident. But under ordinary circumstances that workers' compensation claim would not equitably toll a personal injury action against a third party who might

---

[4]See, e.g., *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal. App.3d 834, 847, fn. 3 [176 Cal.Rptr. 239].)

[5]It is not altogether clear whether the Supreme Court would insist on all three prerequisites. The policy rationale of *Elkins* and *Addison* suggests that in an appropriate case a statute of limitations might be equitably tolled where only the second prerequisite was fulfilled. But it is difficult to imagine a situation where the defendant had a full opportunity to gather evidence relevant to the second claim unless the other two prerequisites also were satisfied.

also be liable for the injury. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473 [121 Cal.Rptr. 477, 535 P.2d 341]; but see *Tu-Vu Drive-In Corp.* v. *Davies, supra,* 66 Cal.2d 435 where a claim against a third party tolled the statute of limitations against an attorney defendant in a wrongful execution case.)

The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second. Yet the two "causes of action" need not be absolutely identical.[6] The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim. Pasadena's counsel at oral argument urged the two claims also must represent mutually inconsistent remedies for the same harm as did the workers' compensation and tort actions in *Elkins*. A similar limitation was suggested and rejected in *Nichols* v. *Canoga Industries, supra,* 83 Cal. App.3d at page 964. "(Defendant) argues that any rule tolling the statute of limitations while another remedy is pursued applies only where the pursuit of the earlier and later remedies involves inconsistent positions. . . . [¶] No such limitation appears in the language of the precedent cases. Such a limitation, while possibly inherent in the facts of *Elkins,* is not compatible with the facts of *Tu-Vu Drive-In* or *Friends of Mammoth.* "[7] Nor did the two claims in *Baillargeon* raise inconsistent remedies. The plaintiff in that case could have been entitled to both the workers' compensation award and the supplemental disability pension. So long as the two claims are based on essentially the same set of facts timely investigation of the first claim should put the defendant in position to appropriately defend the second. Once he is in that position the defendant is adequately protected from stale claims and deteriorated evidence.

---

[6] In *Elkins* v. *Derby, supra,* 12 Cal.3d at page 418, the Supreme Court held the filing of a workers' compensation claim equitably tolled the running of the statute of limitations on a tort claim arising out of the same incident even though fault was not an element in the first claim but was in the second.

[7] The rationale of *Tu-Vu Drive-In Corp.* v. *Davies, supra,* 66 Cal.2d 435, and *County of Santa Clara* v. *Hayes Co., supra,* 43 Cal.2d 615, likewise applies to Collier's workers' compensation and disability benefit claims. In those two cases, the plaintiff first pursued a remedy against one defendant which, if successful, would reduce the damages which had to be sought from a second defendant. In *Tu-Vu,* that first remedy was successful, in *County of Santa Clara* it was not. In both instances, the Supreme Court held the statute of limitations for the second action was tolled during the pendency of the first even though the second action was brought against an entirely different defendant. The rationale was that the statute should not run on another remedy while the plaintiff "pursues one designed to lessen the extent of the injuries or damage." (*Addison* v. *State of California, supra,* 21 Cal.3d at pp. 317-318 citing inter alia *Tu-Vu Drive-In Corp.* v. *Davies, supra,* 66 Cal.2d at p. 437 and *County of Santa Clara* v. *Hayes Co., supra,* 43 Cal.2d at pp. 617-619.) When Collier was successful in his workers' compensation case, he reduced the amount of the disability pension for which the pension system might be liable. (See p. 928, *infra.*) Accordingly, he was pursuing a remedy "designed to lessen the extent of the . . . damage" recoverable against the defendant in the disability pension claim and the statute of limitations should toll.

In terms of the underlying policies of the statutes of limitation, it is irrelevant whether those two claims are alternative or parallel, consistent or inconsistent, compatible or incompatible.

The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison* v. *State of California, supra,* 21 Cal.3d 313 the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended. Perhaps, if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be considered unreasonable. (*Nichols* v. *Canoga Industries, supra,* 83 Cal.App.3d at pp. 963-964.) Or if the plaintiff deliberately misled the defendant into believing the second claim would not be filed, that action might be deemed to constitute bad faith.

■ The doctrine of "equitable tolling" is supported by several important policy considerations. First, it secures the benefits of the statutes of limitation for defendants without imposing the costs of forfeiture on plaintiffs.[8] Secondly, it avoids the hardship upon plaintiffs of being compelled to pursue simultaneously several duplicative actions on the same set of facts.[9] Thirdly, it lessens the costs incurred by courts and other dispute resolution tribunals, at least where a disposition in the case filed in one forum may render the proceeding in the second unnecessary or easier and cheaper to resolve.[10]

B. ■ *Plaintiff's Filing of Workers' Compensation Claim Equitably Tolled Defendant City's Six Month Limitation on Initiating Disability Pension Claims*

Once the rather complex sequence of events is unraveled, the Collier situation makes a persuasive case for application of the doctrine of "equitable tolling." Collier's actions, and those of his counsel, satisfy all three prongs of the test. Moreover, allowing Collier to proceed with his disability pension claim also furthers the policies underlying the "equitable tolling" doctrine.

---

[8]As Justice Richardson observed in *Addison* v. *State of California, supra,* 21 Cal.3d 313, 319, "To apply the doctrine of equitable tolling . . . satisfies the policy underlying the statute of limitations without ignoring the competing policy of avoiding technical and unjust forfeitures."

[9]As Justice Tobriner observed in *Elkins* v. *Derby, supra,* 12 Cal.3d 410, 419, footnote 8, "To plaintiff's contention at oral argument that compensation attorneys, handling hundreds of cases annually, would be required, under the rule defendants advocate, to file multitudes of cases before two tribunals, defendants offered no persuasive rebuttal."

[10]As Justice Tobriner also observed in *Elkins* v. *Derby, supra,* 12 Cal.3d at page 420: "If, in order to avert loss of his rights, an injured party is forced to initiate proceedings with both the compensation board and a superior court, he brings onerous procedural burdens upon . . . the already overtaxed judicial system. Such additional resource investments go for nought whenever the compensation board concludes that the injured party is entitled to relief."

### 1. *Collier Provided Timely Notice to Pasadena*

The timely notice requirement was satisfied when Collier filed his workers' compensation claim alleging employment-related disability. That claim was filed only two-and-one-half months after he suffered the injuries which are the source of both the workers' compensation claim and the disability pension claim. That is easily within the six months allowed for initiating disability pension claims.

Only if the retirement pension board is a completely separate defendant from the City of Pasadena which was contesting the compensation claim could the filing of the first claim possibly fail as timely notice. To take that position this court would have to accept an artificial compartmentalization of a single corporate entity, the City of Pasadena, which defies common sense. The City of Pasadena operates this pension plan. The City of Pasadena is the employer involved in the workers' compensation claim. The same city attorney's office represented the city with respect to both claims. We have no difficulty holding that notice to the city in its capacity as an employer defendant in a workers' compensation case constituted timely notice to the city in its capacity as a retirement plan administrator.

In this we are supported by *Baillargeon* v. *Department of Water & Power, supra,* 69 Cal.App.3d 670, where the Court of Appeal treated the filing of a workers' compensation claim as notice adequate to toll an equitable estoppel claim against the same employer's retirement plan. We are further supported by Supreme Court authority holding city pension plans are so much a part of city administrations that they are collaterally estopped by the findings in related workers' compensation proceedings. "It is immaterial that the pension board was not a party to the Industrial Accident Commission proceeding. The city, which is not only a party herein but the real party in interest, was also a party to and appeared in the prior proceeding. Under the city charter, the pension board acts as an agent of the city, and, in this representative capacity, it is bound by the commission's decision if the city is bound. . . . It is likewise immaterial in the present case whether the pension board be regarded as . . . a local administrative body with power to make final determinations of fact. . . . [T]he doctrine of res judicata is applicable . . . ." (*French* v. *Rishell* (1953) 40 Cal.2d 477, 482 [254 P.2d 26].)

If the city as employer and the city as pension plan administrator are the same entity for purposes of collateral estoppel, surely they cannot claim to be separate entities for purposes of equitable tolling. When Collier filed his workers' compensation claim against the city it was notice as well to the city's agents, the pension board.

If more were required, it is present in this case. Pasadena has by ordinance intertwined workers' compensation and disability pension claims to the degree that this city could not in good conscience claim the left hand did not know what the right hand was doing. The disability pension ordinances specifically provide that benefits paid to an individual out of a workers' compensation award are to be deducted from any disability benefits he is entitled to under the pension plan.[11] These ordinances further provide that lump sum compensation awards will delay any pension benefit payments until the accrued benefits exceed the amount of the award.[12] Thus, the extent of the retirement plan's liability is deeply affected by the outcome of any workers' compensation proceedings which may involve one of its retirees. The city and its retirement system have a great stake in tracking the progress of workers' compensation claims even if the claim is uncontested. Here the city was fighting Collier's claim vigorously and at great length. It would be difficult for the retirement board to deny actual notice that Collier was claiming to have sustained disabling injuries while employed as a Pasadena fireman even if it were some sort of independent entity, rather than a creature of the City of Pasadena and an integral component of that city's administration.

Furthermore, even were we to treat Pasadena's fire department and its fire and police pension system as completely independent defendants the notice requirement was satisfied in this case. Recall the function of this first prerequisite. It is to alert the defendant in the second action of the need to gather and preserve evidence in order to be in a position to defend against that second claim. Here it was unnecessary for the Pasadena retirement board to gather and preserve its own evidence. Rather that evidence was being assembled for it by the defendant in the first action, the Pasadena Fire Department.

Even if the retirement board had no knowledge the workers' compensation investigation was underway, it clearly had full access to the fire department's evidence *whenever* the board realized it needed to defend against a disability claim. Presumably that much privity exists, at least, between these two arms of the Pasadena government. As we shall see shortly, the evidence relevant to this workers' compensation claim is nearly identical to that germane to the disability

[11]"That portion of any allowance which is provided by contributions of the city, payable by the retirement system . . . because of the death or retirement of any member shall be reduced by the amount of any benefits payable to or on account of such member, under the Workmen's Compensation laws of the state, where such benefits are payable for the same cause which resulted in such allowance." (Pasadena Mun. Code, § 2.54.270 (A).)

[12]"It is the purpose of this section to reduce the portion of the allowances payable from the retirement fund by the amount concurrently due to the beneficiary under the compensation laws . . . and the payment before due date by the commutation (lump-sum payment) through compromise or otherwise of such other benefits and pension from public funds shall not prevent the reduction of said portion, as provided in this section, in the amounts which would have been payable concurrently with the allowance in the absence of such commutation." (Pasadena Mun. Code, § 2.54.270 (D).)

retirement claim. Hence the lawyer defending the compensation claim should have accumulated most of the evidence necessary to contest the retirement claim. And the lawyer assigned to defend against the latter claim will have all that evidence available to prepare his or her defense. Indeed this level of cooperation is guaranteed since both lawyers will be from the same "law firm," the Pasadena City Attorney's office or its designated outside counsel. In these circumstances the second defendant can scarcely contend it is prejudiced in gathering evidence by a delayed filing of the second claim.

We are not disposed to indulge the fiction that Pasadena's fire department and its fireman's pension program are separate defendants. But if we were, the notice requirement was still satisfied. Here we have the rather unusual situation where notice to one defendant results in the timely collection of the very evidence needed by the second defendant and where the first is only too happy to share all that evidence with the second.

*2. Pasadena Was Not Prejudiced in Gathering Evidence to Contest the Disability Pension Claim*

Collier's filing of the workers' compensation claim likewise satisfied the second prong of the "equitable tolling" test. The defendant was "not prejudiced in gathering evidence" which may be needed to defend the disability pension claim. The essential factual elements of the two "causes of action" are nearly identical. The statutory elements of the workers' compensation scheme require proof that the claimant's disabling condition resulted from an injury "arising out of and in the course of the employment." (Lab. Code, § 3600.) Meanwhile Pasadena ordinances define the elements of a disability retirement claim to require proof the disability "is the result of injury or illness incurred in the performance of duty, . . ." (Pasadena Mun. Code, § 2.54.210.) It is difficult to imagine that the City of Pasadena in gathering evidence to refute Collier's contention he was disabled by an "injury arising out of and in the course of [his] employment" would not have collected substantially all the evidence needed to contest the claim that Collier's disability was "the result of injury or illness incurred in the performance of duty." The elements of the two claims are not merely similar; they are nearly identical.

The leading case of *Elkins* v. *Derby, supra,* 12 Cal.3d at pages 417-418 found enough similarity between causes of action to justify equitable tolling even where the elements were not identical. There the filing of a workers' compensation claim was held to toll the statute of limitations for a subsequent tort claim against the employer. The court expressly addressed the problem that the second cause of action involved a critical element—fault on the part of the employer—which was not an element of the first cause of action. "To be sure, an employer notified of a compensation claim may fail to gather evidence of

fault, and such evidence could prove critical in a subsequent tort action. . . . The likelihood, however, that the employer will suffer prejudice if the compensation claimant files a tort action more than one year after the date of injury is minimal. After the filing of a compensation claim, the employer can identify and locate persons with knowledge of the events or circumstances causing the injury. By doing so, he takes the critical steps necessary to preserve evidence respecting fault. Although he may choose not to gather evidence bearing on fault from these parties when faced only with a compensation claim, he will be able in most instances to recontact these people, particularly if they are continuing employees, for further evidentiary contributions should a controversy as to fault later arise in a tort action." (*Id.* at p. 418.)

If there was "no prejudice to the defendant in gathering evidence" under the facts of *Elkins*, a fortiori, Pasadena has not been prejudiced in this case. Pasadena cites *State of California* v. *Industrial Acc. Com.* (1961) 195 Cal. App.2d 765 [16 Cal.Rptr. 138] for the proposition a workers' compensation claim and a disability pension claim are too dissimilar for a filing of one to toll the statute of limitations for the other. In that opinion the Third District Court of Appeal held the statute of limitations was not tolled for a workers' compensation claim merely because the State Employees' Retirement System had petitioned the Industrial Accident Commission for a determination of whether an injured party's disability was "industrial in nature."

*State of California* v. *Industrial Acc. Com.* can be distinguished on several grounds.[13] But more importantly, this Court of Appeal case was decided more

---

[13]The limited issue specifically addressed in *State of California* v. *Industrial Acc. Com.* was whether the *retirement board's* filing of a petition with the Industrial Accident Commission tolled the statute as to the workers' compensation claim. Thus the Court of Appeal did not consider nor rule on the issue of whether an *injured worker's* filing of a disability retirement claim would toll the statute on the compensation claim. Furthermore, *State of California* v. *Industrial Acc. Com.* involved a very different configuration of defendants. The retirement claim was lodged with a *state* retirement plan attempting to process disability claims from employees working for government agencies of every description located throughout this vast state. Meanwhile the workers' compensation claim was filed against one of those governmental employers, the state highway patrol, an agency with no special relationship to the overall state plan. Collier's retirement claim, on the other hand, is against a city-administered program set up specifically for the benefit of only two narrow classes of city employees, firemen and policemen. And the other party involved in Collier's workers' compensation cases is the very city government which administers this special retirement plan. It thus is much easier to find the filing of the first claim provided effective notice to the defendant in the second claim under the facts of the instant case than it might have been in *State of California* v. *Industrial Acc. Com.*

The *State of California* v. *Industrial Acc. Com.* case also involved the reverse sequence of filings. The injured patrolman first filed his disability retirement request, then belatedly brought his compensation claim. Conceivably, an appellate court might hold filing a retirement claim should not toll the statute on a workers' compensation claim even though a workers' compensation claim would toll the retirement claim. This approach would encourage disabled workers to follow the logical sequence—to dispose of the compensation claim first then use that determination to decide eligibility for the disability pension. This is the more logical sequence since disputants in a pension case frequently turn to the compensation board to determine the crucial

than a decade before the Supreme Court's leading cases enunciating the doctrine of equitable tolling. We have serious doubt the *State of California* v. *Industrial Acc. Com.* court would have reached the same decision if it were confronting the same factual situation after the recent flowering of equitable tolling in California. Certainly that court's major premise—"[w]here the two proceedings are different and separate, as they are in this case, the pendency of one does not generally toll the statute of limitations of the other, . . ." [195 Cal.App.2d, p. 769.]—would not be as self-evident as it may have appeared in 1961.

Workers' compensation claims are "different and separate" from tort claims against an employer. Yet the California Supreme Court had no difficulty using one to equitably toll the other. (*Elkins* v. *Derby, supra,* 12 Cal.3d 410.) Nor did the court have any trouble tolling a state tort claim action while the plaintiffs pursued a federal civil rights lawsuit in federal court. (*Addison* v. *State of California, supra,* 21 Cal.3d 313.) Even more to the point the Court of Appeal managed to toll an equitable claim for supplemental disability benefits while a workers' compensation proceeding ran its course. (*Baillargeon* v. *Department of Water & Power, supra,* 69 Cal.App.3d at pp. 682-684.) Accordingly, insofar as *State of California* v. *Industrial Acc. Com.* might be deemed to reach the facts of Collier's disability claim against Pasadena, we decline to follow it because we believe it no longer represents a valid statement of California law.

### 3. *Collier and His Attorneys Acted Reasonably and in Good Faith*

The third prong of the test requires that Collier have acted reasonably and in good faith. By implication it likewise requires that Collier's lawyers have acted reasonably and in good faith since they made most of the decisions about whether and what to file.

One possible indicium of reasonableness and good faith is whether a plaintiff filed the second claim within a reasonable time after the period of tolling concluded. By that measure, Collier and his first attorney, Boerner, acted most reasonably. Indeed the disability retirement application form was filed while

issues and because findings in workers' compensation proceedings are binding in pension hearings, (*Dakins* v. *Board of Pension Comrs.* (1982) 134 Cal.App.3d 374 [184 Cal.Rptr. 576]; *French* v. *Rishell, supra,* 40 Cal.2d 477) but not vice versa.

We find it unnecessary in deciding Collier's appeal to address the issue of whether filing a disability retirement claim necessarily tolls the statute for a workers' compensation claim arising out of the same incident. As discussed above, the two situations are distinguishable in fact and policy. Nonetheless, we do note that the real issue under the equitable tolling doctrine appears to be whether the defendant in the second claim was actually prejudiced in gathering the evidence necessary to defend that claim. Or did the filing of the first claim provide that particular defendant with the opportunity and motive to gather the needed evidence in a timely fashion. Given an appropriate configuration of parties and claims, the filing of a retirement claim could conceivably prompt the sort of investigation which justifies equitable tolling of a related workers' compensation claim.

the statute was still tolling. The workers' compensation claim equitably tolled Pasadena's six months limitation statute until October 23, 1978, when Collier and the city settled the compensation claim by signing a "Compromise and Release." At that point, something between three-and-a-half and six months of untolled time remained to run on the limitation statute.[14]

As a result, Collier technically could have waited until sometime between February 1979, and April 23, 1979, to forward his disability pension application form. Whether to have waited that long to file the pension claim would have represented reasonable and good faith conduct we need not decide. For, in actuality, Collier's attorney forwarded the application form on August 20, 1977, well over a year *before* the equitable tolling period ended.

Another possible indicium of reasonableness and good faith is whether the plaintiff takes affirmative actions which might mislead the defendant into believing the plaintiff was foregoing his second claim. Again Collier and his attorneys appear to have demonstrated reasonableness and good faith.

In May 1977, Pasadena sent Collier a $5,291.57 check purporting to implement his withdrawal from the retirement system. Had Collier cashed this check he would have been sending a signal which might be deemed the sort of unreasonable or bad faith conduct which would have barred him from asserting the equitable tolling doctrine. And, recalling he was no longer receiving a salary from the city and had not yet obtained the $22,000 from his workers' compensation claim, Collier may have been sorely tempted to cash that check. But he did not. Instead by refusing to cash the check Collier sent the contrary signal, one that a reasonable defendant would have construed to indicate this plaintiff was continuing to pursue his rights under the retirement system. Certainly no defendant could have been unfairly misled into believing that Collier had irrevocably abandoned his interest in receiving a disability pension.

It is true that Collier's first attorney, Boerner, evidently did not badger the city about the progress of its consideration of the disability benefit claim. But a plaintiff's inaction on the second claim—as opposed to affirmative conduct—can seldom be said to have misled the defendant in a way that would negate equitable tolling on that claim. Complete inactivity on the second claim, in fact, is what "equitable tolling" is all about. This doctrine excuses the plaintiff from even filing a claim to say nothing of relieving him of responsibility for constantly monitoring the defendant's disposition of his claim.

---

[14]If the statute is deemed to run from the date of the disabling injury, then about two-and-one-half months of the period had expired before the workers' compensation claim was filed. On the other hand, if the statute is not deemd to begin running until the date of termination none of the six months period had been used up, since Collier filed the workers' compensation claim well before Pasadena terminated his employment.

But assuming that a failure to act could sometimes unfairly mislead a defendant, in the context of this case Collier's relative inactivity on the disability pension claim qualified as reasonable and good faith conduct for a very good reason. Collier's attorney had thrown the ball to Pasadena's court when he filed the application form well within the tolled period. When Pasadena failed to notify either Collier or his lawyer that it had denied this claim, the city effectively picked up the ball and left the court under cover of darkness. If Collier's team was inactive they had good reason. They were waiting for the ball to come back into their court.

Under the above circumstances, it is difficult for the City of Pasadena and its retirement board to contend they were misled either by action or inaction on the part of Collier or his attorneys. We hold that Collier and his attorneys conducted themselves reasonably and in good faith and therefore easily satisfied this third prerequisite of the "equitable tolling" doctrine.

## C. *The Policies Underlying Equitable Tolling Also Support Application of the Doctrine to Collier's Claim*

Policy considerations also support tolling Pasadena's statute of limitations against Collier while his workers' compensation claim arising out of the same incident was pending.

First, the statute's primary purposes are achieved without forfeiting plaintiff's rights. Filing the workers' compensation claim supplied Pasadena all the notice and motive it needed to gather the evidence about Collier's mental and physical condition and the causes of any claimed disabilities which would be important in defending against the disability pension claim. That fulfilled the primary legitimate function of a statute of limitations—protecting defendants against the necessity of having to belatedly investigate a claim so ancient that documents will have disappeared or crumbled, witnesses will have died or forgotten, and the like. Here the City of Pasadena not only had the opportunity and motive to gather the evidence relevant to Collier's disability pension claim while it was still fresh, the city actually had done so in the course of its vigorous resistance to the workers' compensation case. Equitable tolling in this case thus avoids imposing the harsh cost of forfeiture on the plaintiff where the defendant already has obtained the legitimate benefits conferred by the limitation statute.

Secondly, equitable tolling of disability pension claims during the pendency of related workers' compensation proceedings serves the policy goal of reducing the economic burden on disabled workers. Without tolling, retirees are placed in a situation analogous to that decried in *Elkins*. They are compelled to incur the expense of pursuing simultaneously two separate administrative ac-

tions even though the result in one may determine the outcome in the other[15] and almost certainly will affect the benefits payable in the other.

True, many disabled workers may elect to file both claims and proceed with both actions simultaneously in any event. But they should not be foreclosed from awaiting the outcome of the workers' compensation case before undertaking the expense of instituting and proving the disability pension claim. ■ (See fn. 16.) If the worker loses the compensation case, he or she may well decide it is not worthwhile to invest in the pension case even where res judicata still allows that possibility.[16] Conversely, if the worker wins the compensation case, it normally should prove cheaper and easier to prevail in the disability pension proceeding than if the compensation case were still outstanding.

Finally, equitable tolling of disability claims during the pendency of related workers' compensation claims may reduce public dispute resolution costs, as well. Where the disabled worker elects to allow the fate of his retirement claim to await the outcome of the workers' compensation proceeding, the city avoids a duplicative investigation. The evidence gathered in the workers' compensation proceeding ordinarily will be determinative in deciding the disability retirement claim. Hence, the city will not find it necessary to conduct two simultaneous, parallel investigations of the disabled worker's cause of injury, physical and mental condition, and the like. Moreover, the retirement board hearing itself can be briefer and less expensive since board members will have the benefit of the compensation board's evaluation of the evidence relevant to both claims.

III. ■ PETITIONER'S SUPERIOR COURT ACTION IS TIMELY WHETHER CONSTRUED AS A PETITION FOR WRIT OF MANDATE UNDER STATE LAW OR A 42 UNITED STATES CODE SECTION 1983 FEDERAL CLAIM BROUGHT IN STATE COURT

Much of the argument between Collier and Pasadena revolves around the issue of which statute of limitations applies to the action filed in the superior court challenging the city's denial of Collier's disability pension claim. Collier contends the action filed below is a claim under 42 United States Code section 1983 and a three-year statute of limitations should apply. Pasadena counters this is really an administrative mandate action and therefore the city's six-

---

[15]As to several key issues—such as whether the disabling injury was work-related—findings made in any workers' compensation proceeding would constitute collateral estoppel against the city's pension board in any disability pension hearing. (*French* v. *Rishell, supra,* 40 Cal.2d 477; *Dakins* v. *Board of Pension Comrs., supra,* 134 Cal.App.3d 374.)

[16]A workers' compensation case may be decided against the worker as to issues which do not collaterally estop him or her in the disability retirement proceeding, such as the amount of the award and permanence of the injury. (*DeCelle* v. *City of Alameda* (1960) 186 Cal.App.2d 574 [9 Cal.Rptr. 549].)

month limitation ordinance should govern. As a fallback position, Pasadena contends even a valid federal action under 42 United States Code section 1983 would be required to adopt Pasadena's six-month limitation period as its own.

We do not reach the issue of which limitation period is appropriate. Under either construction, petitioner's action was timely filed in the superior court because Collier filed the petition less than six months after discovering his application for disability pension had been denied.

In reaching this conclusion, we first note the statute of limitations for a writ of administrative mandate does not run from the date of the injury or the date of filing the complaint. Rather, the statute of limitation—whatever its length—begins running from the time a copy of the agency's decision is delivered or mailed to the claimant. (*Koons* v. *Placer Hills Union Sch. Dist.* (1976) 61 Cal.App.3d 484, 490 [132 Cal.Rptr. 243]; *DeCordoba* v. *Governing Board* (1977) 71 Cal.App.3d 155, 158 [139 Cal.Rptr. 312]; 5 Witkin, Cal. Procedure (2d ed. 1981 supp.) Extraordinary Writs, § 225, p. 166.)

According to the allegations of Collier's complaint, a copy of the board's decision denying his application was never sent to him. Instead, Collier first learned of the board's decision on August 7, 1980, when his new lawyer, Posner, examined the city's file. We assume, without deciding, that Posner's examination of the file constituted constructive notice substantially equivalent to a delivery of the board's decision. Under that assumption, the earliest date at which the statute of limitations for a *writ of mandate* began running was August 7, 1980. Even accepting Pasadena's argument that the appropriate limitation period was six months, Collier's time would not have run out until on or about February 6, 1981. Collier in fact filed his original petition on October 30, 1980, safely within Pasadena's own six months statute of limitations.

CONCLUSION

We hold petitioner Collier timely filed his action below challenging the denial of his disability retirement benefit. We further hold Collier filed his initial claim for this disability retirement benefit within the statutory period as equitably tolled by his earlier filing of a workers' compensation claim for this same disability. Consequently, the court below erred in sustaining respondent Pasadena's demurrer and in ordering a dismissal of petitioner's action based on that demurrer. Since we grant relief on this basis, we need not consider Collier's alternative, possibly valid contention that Pasadena's actions equitably estopped the city from raising a statute of limitations defense.

The judgment is reversed and remanded for proceedings consistent with this opinion.

Schauer, P. J., and Thompson, J., concurred.