**William Steven RIGG, Plaintiff—Appellant,**

and

**Judith V. Rigg, Plaintiff,**

v.

**State of CALIFORNIA; William Merkle; Thomas Maddock; Eddie Myers; James Gomez; and George A. Smith, Defendants—Appellees.**

No. 00–17371.

D.C. No. CV–97–02084–DFL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2002.

Decided March 20, 2002.

Before D.W. NELSON and HAWKINS, Circuit Judges, and FITZGERALD,* District Judge.

MEMORANDUM **

The facts are well-known to the parties and will be repeated only so far as necessary to explain our decision. William Steven Rigg ("Rigg"), a former California corrections officer, filed suit in November

* Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1997 and the bulk of his claims occurred before November 1996. As a general matter, Rigg's 42 U.S.C. § 1983 claims against (now-retired) Warden George A. Smith ("Smith" or "Warden Smith") would be time-barred by the one year limitations period for claims arising in California. *See De Anza Properties X. Ltd. v. County of Santa Cruz,* 936 F.2d 1084, 1085 (9th Cir. 1991). It is Rigg's burden to establish that an exception applies to the limitations period.

■ As to Rigg's claims against Warden Smith, and only Warden Smith, Rigg has established an exception under the doctrine of equitable tolling. Rigg's first workers compensation claim, filed on October 21, 1994, allows the statute of limitations to toll on his § 1983 claims. Under California law, tolling is permitted if Rigg had several legal remedies and reasonably and in good faith chose not to pursue all of them simultaneously. However, he must also show that there was " 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' *Addison v. State of California,* 21 Cal.3d 313, 319, 146 Cal. Rptr. 224, 578 P.2d 941 (1978)." *Daviton v. Columbia/HCA Healthcare Corporation,* 241 F.3d 1131, 1133 (9th Cir.2001) (en banc).

■ Rigg did present the district court with evidence that Warden Smith had timely notice from the filing of the first claim.[1] As a preliminary matter, the first workers compensation claim filed by Rigg indicates that the stress injuries he was experiencing were a result, at least in part, of the punitive job reassignment, which Smith admits to ordering. To be sure, Smith was not the named employer on the workers compensation claim—that was the California Department of Corrections—but the record indicates that Smith knew what was going on. Rigg had complained to Warden Smith about Smith's own acts and those under Smith's supervision.[2] Moreover, Smith received a Memo from Claudia Elliot, his Return to Work Coordinator, which ties the workers compensation claims directly to Rigg's whistleblowing. This memo shows that: (1) Smith was clearly made aware of Rigg's "stress"-related workers compensation claim; and (2) the memo is not just a status report on the progress of Rigg's claim, but alerts Smith that Rigg's deposition was interrupted and then postponed because of Rigg's conversations with the U.S. Attorney's Office. Under these specific circumstances, and in the context of the imbroglio developing under Smith's watch at Corcoran State Prison, we think it reasonable to conclude that Warden Smith had notice of the first claim, and that "the filing of the first claim" would "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Collier v. City of Pasadena,* 142 Cal.App.3d 917, 924, 191 Cal. Rptr. 681 (1983).

---

**1.** On October 21, 1994, Rigg filed a workers compensation claim for stress-related injury. In his workers compensation claim, Rigg alleged that he was being subjected to "on going [sic] harrasment [sic]," and was "Being threatened with termination, demotion, adverse action, punitive job change because of refusal to violate state law or departmental policy." On December 15, 1994, Rigg filed a second workers compensation claim, alleging that stress was causing him high blood pressure, and a third stress-related workers compensation claim was filed on March 6, 1995, not long after Rigg's truck was vandalized while parked at Pleasant Valley Prison.

**2.** For example, in his workers compensation interview, Rigg had complained that as of February 1995 he was still waiting for Smith to honor his request to be transferred from Corcoran State Prison.

The notice inquiry typically depends upon the extent of the similarity between the first and second claims.[3] The federal cause of action invoked here is based upon many of the same facts that led Rigg to allege that he suffered stress due to harassment and threats of "termination, demotion, adverse action, punitive job change because of refusal to violate state law or departmental policy." While it is true that Rigg claimed that his stress injuries began before the retaliatory actions of Smith and others, this would not necessarily contradict a finding that his stress injuries or high blood pressure were exacerbated by Smith's retaliatory actions.

■ The second prong of analysis under California law concerns whether there was any prejudice to the defendant. Smith merely asserts that "he was obviously prejudiced in his ability to defend himself in this lawsuit" simply because he was retired after July, 1996. A mere assertion of prejudice will not do; although he is retired, Smith has not indicated any difficulty he would have in gathering evidence or locating witnesses. In the absence of proof to the contrary, we find no prejudice to Smith if this suit were to proceed.

■ The third factor of our analysis weighs heavily in Rigg's favor. In short, we find that Rigg acted in good faith and was not unreasonable in filing the second claim when he did. The district court correctly observed that there is no exhaustion requirement in § 1983 suits, and therefore Rigg wasn't required to delay filing his federal claims. However, Rigg was embroiled in a very delicate situation, rife with hostility, antagonism and resentment for his whistleblowing. Rigg also explained his delay: he had hoped that transfer to another prison, rather than a lawsuit, would make the retaliation and harassment stop. Under these circumstances, Rigg might have reasonably concluded that forcing a lawsuit immediately might make things worse in the prisons, not only for the officers and those guards trying to meliorate conditions, but perhaps also for the inmates. Under these difficult circumstances, Rigg's actions should not be deemed unreasonable or lacking in good faith.

Because we find equitable tolling applies to Rigg's claims against Warden Smith, we must now examine whether Smith would be entitled to qualified immunity for some of his actions. The appropriate test for determining whether Smith should receive qualified immunity is based on the outcome of the balancing formula outlined in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Rigg must show that his speech involved a matter of public concern and that the interests served by allowing Rigg to express himself outweighed the state's interests in promoting workplace efficiency and avoiding workplace disruption. In answering that question, we are mindful that the qualified immunity analysis should not occur in a vacuum, processing facts wrenched from their proper context. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

■ There can be no reasonable dispute over whether Rigg's concerns over the im-

---

3. At the time of its decision, the district court did not have the benefit of *Daviton v. Columbia/HCA Healthcare Corporation*, 241 F.3d 1131 (9th Cir.2001) (en banc), which overruled *Fobbs v. Holy Cross Health System Corporation*, 29 F.3d 1439, 1445 (9th Cir.1994) to the extent that it conflicted with *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993), on the issue of whether a threshold requirement that the prior and current complaints address the same wrongs and grant the same remedies before the three part test of California law applies. The law of this Circuit is that no such threshold inquiry is required before applying the three-part test. *See Daviton*, 241 F.3d at 1133.

proper shooting policy specifically and inmate treatment generally at Corcoran can survive the first threshold. They do. Further, the second prong is also satisfied by Rigg because of this Circuit's long line of cases indicating that "the public's interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer's interest in avoiding a mere *potential* disturbance to the workplace." *Keyser v. Sacramento City Unified School District*, 265 F.3d 741, 748 (9th Cir.2001) (emphasis in original) (citing cases). Whistleblowing "by its very nature ... engender[s] some hostility and resistance," *see id.*, but that is no reason to not support the "free speech interests at the core of speech on matters of public concern." *Id.* A government supervisor, we have held, "does not have a legitimate interest in covering up mismanagement or corruption and cannot justify retaliation against whistleblowers as a legitimate means of avoiding the disruption that necessarily accompanies such exposure." *Id.*

Because Rigg has shown that Smith's conduct violated a constitutional right, and because such a right was clearly established—that is, a reasonable official would know his conduct was unlawful in the situation he confronted—Smith lacks qualified immunity for the claim concerning allegedly retaliatory actions taken against Rigg.

■ Moving beyond qualified immunity, we consider whether it was appropriate to grant summary judgment to Smith on other grounds. To prevail, Rigg must show that he engaged in constitutionally protected conduct that was a substantial or motivating factor in the adverse action. Then, if Rigg is able to survive that burden, the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct. *Keyser*, 265 F.3d at 750. Moreover, it is Rigg's responsibility to show that the retaliation he suffered, taken as a whole, was adverse. *Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir.2000).

■ The district court, rather than addressing the allegations as a whole, as *Blair* indicates, dissected each discrete event, concluding that, with one exception, each act was either not adverse, not connected to Smith or not motivated by Smith's retaliatory intent. But Rigg alleges he was threatened with termination by associate wardens under Smith's supervision, that he was transferred to a less desirable job at Smith's behest,[4] that he was endangered by Smith's vilification of whistleblowers in front of the prison guards (especially because it was predictable that Rigg would become known as the whistleblower); and that he was prevented by Smith's deputies and associates from receiving training.[5] While Smith was culpable directly for only some of these acts of retaliation, a reasonable jury could find that Smith was "aware of a specific risk of harm" to Rigg, and did nothing to prevent

---

**4.** On October 8, 1994, Steve Rigg was reassigned, on the order of Warden Smith, to a position as a 3–A relief lieutenant. Warden Smith admitted he reassigned Rigg because Rigg was "stealing documents from my prison." Although the reassignment did not affect Rigg's pay or benefits, Rigg viewed it as punitive, a viewpoint validated in part by Smith's admission that he ordered the reassignment because Rigg was "stealing documents." The documents Rigg was "stealing," however, were evidence of a shooting of an inmate in violation of California Department of Corrections' policy. Rigg wanted evidence preserved for the FBI investigation of misconduct at Corcoran State Prison.

**5.** Excepting these specific allegations by Rigg against Smith, we agree with the district court's analysis of Rigg's other allegations, and that those ones should not proceed beyond summary judgment.

it from happening under his watch by those under his command. In other words, a jury could find that Smith in his individual capacity "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (internal quotations, citations and brackets omitted). *See also Blair,* 223 F.3d at 1079 (summary judgment inappropriate because plaintiff "was subjected to a series of acts that a reasonable factfinder could infer were inflicted by members of the Department with the knowledge and tacit connivance of those running the Department").

Smith's acts and omissions could be viewed by a rational fact finder as motivated by retaliatory intent. Smith's statements about whistleblowers during the October 31, 1994, meeting might, to a reasonable jury, indicate hostile intent, especially in light of Smith having acknowledged transferring Rigg to a less desirable job.

Conclusion

The district court acknowledged that, absent statute of limitations concerns, the claim surrounding Rigg's reassignment by Smith to a different job in October, 1994 should go forward. Having removed the time bar, we agree. But we further hold that three other allegations surrounding Smith's actual involvement in, or deliberate indifference to, the pattern of retaliatory behavior against Rigg should go forward, in part because Smith did not have qualified immunity for the pattern of retal-

iatory actions alleged as a whole, and that absent qualified immunity, summary judgment for Smith was inappropriate.[6] With respect to Rigg's claims against Warden Smith, we therefore affirm in part, reverse and remand in part for proceedings consistent with this memorandum disposition. With respect to Rigg's claims against all other defendants, the judgment of the district court is affirmed.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART. Each party to bear its own costs on appeal.

---

**6.** To reiterate: The three additional allegations to go forward are the threat of termination for going outside the chain of command; the prevention by Smith of Rigg to receive training at Galt; and Smith's statements against whistleblowers in October, 1994. The ones that will not go forward are: the claim that Smith prevented Rigg from training officers on the shooting policy at Corcoran; the claim that Chavez gave Rigg a punitive job change on the order of Smith; and the claim that Smith blocked Rigg's request to transfer to Pleasant Valley Prison.