Filed 1/13/21; On remand

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAINT FRANCIS MEMORIAL HOSPITAL, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> STATE DEPARTMENT OF PUBLIC HEALTH, <br><br>     Defendant and Respondent. | A150545 <br><br> (San Mateo County <br> Super. Ct. No. CIV 537118) |

Saint Francis Memorial Hospital (Saint Francis) petitioned for a writ of administrative mandate after being fined $50,000 by the California Department of Public Health (Department). The trial court sustained the Department's demurrer based on the statute of limitations, and judgment was entered in the Department's favor. Saint Francis appealed, contending that the court erred by sustaining the demurrer because the petition was timely, the limitations period was equitably tolled, and the Department was equitably estopped from claiming the petition was filed late.

This court affirmed the judgment on May 23, 2018. We concluded that the petition was not timely and that Saint Francis was not entitled to the benefit of either equitable tolling or equitable estoppel. Our state Supreme Court granted Saint Francis's petition for review of our decision. (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2018) 24 Cal.App.5th 617, review granted Aug. 22, 2018, S249132.)

1

On June 29, 2020, the Supreme Court issued an opinion addressing only the issue of equitable tolling. (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719 (*Saint Francis*).) The Court held that the 30-day limitations period under Government Code[1] section 11523 for filing a petition for a writ of administrative mandate may be equitably tolled (*Saint Francis*, at p. 717), a conclusion we had assumed. The Court also held that the first two elements of equitable tolling—timely notice and lack of prejudice—were satisfied, but it concluded that we should resolve whether Saint Francis satisfied the third element of reasonable and good faith conduct by the party seeking tolling. (*Ibid.*) Accordingly, the Court vacated the judgment and remanded the case for us "to determine whether the third element of equitable tolling is satisfied."[2] (*Ibid.*)

On remand, the Department concedes that Saint Francis acted in good faith, meaning that the only question we must decide is whether Saint Francis's actions were objectively reasonable. We conclude that they were not, because it is not objectively reasonable for an attorney to miss a deadline to file a petition due to a failure to appreciate easily ascertainable legal principles. Thus, although we sympathize with Saint Francis's counsel and recognize it is easy to make such mistakes, we must again affirm the trial court's judgment.

---

[1] All subsequent statutory references are to the Government Code unless otherwise noted.

[2] Because the Supreme Court agreed with us that Saint Francis's petition was untimely and did not disturb our conclusion that equitable estoppel is inapplicable, we will not reiterate our previous discussion of those two issues except as relevant to the equitable-tolling issue.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

The circumstances resulting in the fine against Saint Francis, which are discussed in the Supreme Court's decision, are not relevant to our decision. Instead, we set forth only those facts that bear on whether Saint Francis acted reasonably such that it is entitled to equitable tolling. Because this is an appeal from an order sustaining a demurrer, we accept as true all such facts as alleged in Saint Francis's first amended petition, the operative version. (See *Johnson v. State Water Resources Control Bd.* (2004) 123 Cal.App.4th 1107, 1110.)

The Department issued the challenged decision upholding the fine on December 15, 2015. The decision, which the petition attached as an exhibit and incorporated by reference, was served on Saint Francis the following day. Under the heading "<u>ORDER</u>" on the decision's last page, as entered by the Department's then-director, it reads, "Pursuant to the authority duly delegated to me, I hereby issue this Alternate Decision as the Final Decision of the California Department of Public Health. [¶] This Final Decision is signed on 12/15/15, and shall be effective immediately."

On December 30, 2015, Saint Francis submitted a "Request for Reconsideration" to the Department.[3] Saint Francis stated that the request was made under section 11518.5, but as our previous opinion explained section 11518.5 applies only when a party seeks "correction of a mistake or clerical error in the decision." (§ 11518.5, subd. (a).) Because Saint Francis

---

[3] We grant the Department's request for judicial notice of Saint Francis's request for reconsideration and the Department's own letter denying the request, which we describe below. (See Evid. Code, §§ 452, subd. (c), 459.) Although the petition did not incorporate either document, Saint Francis does not oppose the request for judicial notice.

3

sought to change the decision's outcome, the relevant statute was actually section 11521. (See *Saint Francis, supra*, 9 Cal.5th at p. 718.) Section 11521 "typically allows an agency to order reconsideration of its decision within '30 days after the delivery or mailing of a decision to a respondent.' " (*Saint Francis*, at p. 718, quoting § 11521, subd. (a).) But when an agency makes a decision effective immediately, as the Department did, it "eliminat[es] the 30-day period for reconsideration and activat[es] the 30-day period for filing a petition for judicial review" under section 11523. (*De Cordoba v. Governing Board* (1977) 71 Cal.App.3d 155, 158; §§ 11521, subd. (a), 11523.) The parties agree that the statute of limitations began running on December 16, 2015, the day Saint Francis was served with the decision, and the deadline for filing a petition for a writ of administrative mandate was therefore January 15, 2016. (*Saint Francis*, at p. 718 & fn. 3; see *Koons v. Placer Hills Union Sch. Dist.* (1976) 61 Cal.App.3d 484, 490 [if decision is effectively immediately, the power to order reconsideration expires the day the decision is served].)

Despite the unavailability of reconsideration, the Department staff counsel litigating the case answered Saint Francis's request on the merits on January 8, 2016. The answer "did not raise any question as to whether the [request] for reconsideration could have been considered," and the Department did not "notify [Saint Francis] that the request for reconsideration was void or otherwise invalid" at any time "prior to January 14, 2016," the day on which the Department denied the request.

In the letter denying Saint Francis's request for reconsideration, assistant chief counsel for the Department explained, "[S]ection 11518.5, subdivision (a) provides that within 15 days after service of a copy of the decision on a party, but not later than the effective date of the decision, the

4

party may apply to the agency for correction of a mistake or clerical error in the decision, stating the specific ground on which the application is made. [¶] Since the Final Decision on this matter was issued on December 15, 2015, and was made effective immediately, we are unable to consider your Request for Reconsideration which is deemed denied under . . . section 11518.5, subdivision (a)."[4]  The letter was dated January 14, 2016, but Saint Francis alleges that it did not receive the letter until January 22.[5]

The operative petition alleges that in denying the request for reconsideration on January 14, the Department "waited until the time to file [the petition] had run, knowing full well that [Saint Francis] was relying on the extension of time provided by . . . § 11518.5.  [Saint Francis] relied on the failure by [the Department] to (1) raise the objection to the invalidity of the request for reconsideration in its opposition to the request, and (2) the failure by [the Department] to timely notify [Saint Francis] the request for reconsideration was deemed invalid by [the Department].  Had [the Department] notified [Saint Francis] by objection or other timely notice, [the petition] would have been filed by January 14, 2016.  As a result of its actions [the Department] is barred by the doctrines of Equitable Estoppel and/or Equitable Tolling of the [statute] of limitations from arguing [the petition] was not timely filed."  In other words, the petition alleges that Saint Francis was entitled to equitable tolling because the Department failed to notify it quickly enough that reconsideration of the decision was unavailable as a matter of law because the decision was effective immediately.

---

[4] The Department first explicitly took the position that the relevant statute was actually section 11521 in its demurrer to Saint Francis's original petition.

[5] The copy of the letter of which we take judicial notice does not indicate how or when it was sent to Saint Francis.

5

On January 26, 2016, 12 days after the denial of the request for reconsideration but 41 days after service of the Department's final decision, Saint Francis filed its original petition in the superior court.[6] The Department demurred on the basis that the petition was not timely under section 11523. The trial court sustained the demurrer with "leave to amend to allege additional facts necessary to assert the equitable tolling of the statute of limitations." Saint Francis then filed an amended petition, to which the Department also demurred. The trial court again sustained the demurrer, this time without leave to amend. It found that the petition was untimely and that Saint Francis's "mistake was as to law, not facts. A mistake not caused by the [Department] is not a sufficient basis to excuse [a] late filing."

## II.
### DISCUSSION

#### A.    The Supreme Court's Decision

As explained by the Supreme Court, the doctrine of equitable tolling permits courts, " 'in carefully considered situations' [citation], to exercise their inherent equitable powers to 'soften the harsh impact of technical rules' [citation] by tolling statutes of limitations." (*Saint Francis*, *supra*, 9 Cal.5th at p. 724.) Equitable tolling applies "when three 'elements' are present: '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' [Citation.] These requirements are designed to 'balanc[e] . . . the injustice to the plaintiff occasioned by the bar of [its] claim against the effect upon the

---

[6] The Supreme Court's opinion states that Saint Francis filed the petition 11 days after the Department denied the request for reconsideration. (*Saint Francis*, *supra*, 9 Cal.5th at p. 719.) The one-day difference is not material to our decision.

6

important public interest or policy expressed by the [operative] limitations statute.' " (*Id.* at pp. 724–725.)

In our prior opinion, we stated that " 'equitable tolling applies " ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." ' " ' [Citations.] Because 'Saint Francis's request for reconsideration did not constitute the timely pursuit of an available remedy since reconsideration was unavailable,' [we] concluded that section 11523's statute of limitations shouldn't be tolled." (*Saint Francis*, *supra*, 9 Cal.5th at p. 725.) The Supreme Court explained, however, that its "past cases stop short of categorically conditioning tolling on a plaintiff's pursuit of a viable remedy. [Citation.] The doctrine is sufficiently supple 'to "ensure fundamental practicality and fairness." ' [Citation.] And even in cases where a party seeking tolling pursued an alternative remedy, . . . pursuit of a remedy 'embarked upon in good faith, [yet] found to be defective for some reason,' doesn't foreclose a statute of limitations from being tolled." (*Ibid.*) In other words, while "mistake or neglect alone"—including in the belief that an alternative remedy was available—"doesn't excuse a late-filed petition[,] . . . neither is that fact, when relevant, dispositive of a party's equitable tolling claim; [a court] must consider it as part of the analysis of whether a plaintiff has established equitable tolling's elements." (*Id.* at p. 726.)

The Supreme Court then concluded that Saint Francis met the first two elements of equitable tolling. First, the Department received timely notice of Saint Francis's intent to file a writ petition because Saint Francis notified the Department of that intent on January 14, 2016, one day before the statute of limitations expired. (*Saint Francis*, *supra*, 9 Cal.5th at p. 727.) Second, the application of equitable tolling would not prejudice the Department by

7

"prevent[ing it] from defending a claim on the merits," as the Department had already "defended its assessment of the fine against Saint Francis throughout the administrative proceedings." (*Id.* at pp. 727–728.)

As for the third element, the Supreme Court explained that it "encompass[es] two distinct requirements: A plaintiff's conduct must be objectively reasonable and subjectively in good faith." (*Saint Francis*, *supra*, 9 Cal.5th at p. 729.) Whereas the objective component focuses "on whether [the] party's actions were fair, proper, and sensible in light of the circumstances," the subjective component focuses on the party's intentions, that is, whether the "late filing . . . was the result of an honest mistake or was instead motivated by a dishonest purpose." (*Ibid.*)

The Supreme Court did not determine whether Saint Francis met the third element and instead remanded the matter for us to decide the issue. (*Saint Francis*, *supra*, 9 Cal.5th at p. 730.) The Court explained: "The Court of Appeal didn't address whether Saint Francis's actions were reasonable and in good faith. At oral argument, the parties argued for the first time that certain facts bore on the question of whether Saint Francis satisfies the third element. But the record before us leaves some opacity about whether Saint Francis's conduct was reasonable and in good faith. As we've often done in such situations, we remand the case for the Court of Appeal to determine whether Saint Francis satisfies the third element, and thus is entitled to equitable tolling." (*Ibid.*)

B.     *The Standard of Review and the Record's Scope*

A proceeding in mandamus, including one seeking a writ of administrative mandate under Code of Civil Procedure section 1094.5, "is subject to the general rules of pleading applicable to civil actions." (*Chapman v. Superior Court* (2005) 130 Cal.App.4th 261, 271; *Gong v. City of*

8

*Fremont* (1967) 250 Cal.App.2d 568, 573; see Code Civ. Proc., § 1109.) "We review an order sustaining a demurrer without leave to amend de novo, exercising our independent judgement as to whether, as a matter of law, the complaint (in this case, the petition) states a cause of action on any available legal theory. [Citation.] In doing so we assume the truth of all material factual allegations, and we are required to accept them as such, together with those matters subject to judicial notice." (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 524.)

"[T]he 'demurrer tests the pleading alone and not the evidence or other extrinsic matters which do not appear on the face of the pleading or cannot be properly inferred from the factual allegations of the complaint.' "[7] (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 864.) Specifically, documents in the administrative record are not considered in ruling on a demurrer unless they are "by appropriate reference made a part of the complaint or petition." (*Kleiner v. Garrison* (1947) 82 Cal.App.2d 442, 445–446; see *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 649, 653 [where petition for writ of administrative mandate was pled as one cause of action in civil complaint and resolved on the merits, administrative record could not be considered in determining whether other causes of action were properly dismissed on demurrer].) By the same token, portions of the administrative record that the petition does not incorporate cannot be used to cure deficiencies in the petition. Thus, aside from the documents Saint Francis incorporated in the operative petition, we do not consult the administrative record in determining whether Saint Francis is entitled to equitable tolling.

---

[7] At oral argument before the Supreme Court, the parties discussed for the first time some potentially relevant circumstances, such as whether the Department's normal practice is to make its decisions effective immediately. Given the limited nature of our review, such "facts" are not before us.

(See *Kleiner*, at pp. 445–446; *Tringham v. State Board of Education* (1955) 137 Cal.App.2d 733, 735–736.) This is particularly appropriate because the administrative record is not before us, as Saint Francis did not designate it as part of the record on appeal.

We recognize that consulting the entire administrative record when reviewing an order sustaining a demurrer to a petition for a writ of administrative mandate might be appropriate in other circumstances. If Saint Francis claimed that the trial court abused its discretion by not granting leave to amend the petition a second time, we would have to decide "whether there is a reasonable possibility [Saint Francis] could cure the defect with an amendment." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Portions of the administrative record not currently incorporated into the petition might directly bear on that issue. But "[i]t is the plaintiff's burden on appeal to show in what manner it would be possible to amend a complaint to change the legal effect of the pleading; we otherwise presume the pleading has stated its allegations as favorably as possible." (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962, fn. omitted.) As Saint Francis does not seek to allege further facts to support its claim of equitable tolling, and notwithstanding "some opacity" in the record as mentioned by the Supreme Court (*Saint Francis*, *supra*, 9 Cal.5th at p. 730), we confine the scope of our review as stated above.

C.    *Saint Francis Is Not Entitled to Equitable Tolling Because Its Actions Were Not Objectively Reasonable.*

On remand, the Department concedes that Saint Francis acted in subjective good faith. Thus, the only question we must decide is whether Saint Francis's actions were "objectively reasonable under the circumstances." (*Saint Francis*, *supra*, 9 Cal.5th at p. 729.) We conclude

10

they were not, since Saint Francis missed the deadline to file a petition because of its failure to appreciate easily ascertainable legal principles.

### 1.    Saint Francis's legal mistake

We begin by retracing how Saint Francis came to file the original petition in an untimely manner. The starting point is the applicable statute of limitations. California's Administrative Procedure Act (§ 11340 et seq.) (APA) generally governs adjudicative decisions by the Department (Health & Saf. Code, § 131071). With certain exceptions not relevant here, a petition for a writ of administrative mandate seeking judicial review of a Department decision "shall be filed within 30 days after the last day on which reconsideration can be ordered. The right to petition shall not be affected by the failure to seek reconsideration before the agency." (§ 11523.) Thus, the 30-day limitations period begins running on "the last day on which reconsideration can be ordered."

The next step in ascertaining the deadline to file a writ petition is to determine the last day that reconsideration can be ordered. Section 11521 provides the answer. Under that statute, if an agency does not grant a stay to extend the time available for reconsideration, "[t]he power to order a reconsideration shall expire 30 days after the delivery or mailing of a decision to a respondent, or on the date set by the agency itself as the effective date of the decision if that date occurs prior to the expiration of the 30-day period. . . . If no action is taken on a petition [for reconsideration] within the time allowed for ordering reconsideration, the petition shall be deemed denied." (§ 11521, subd. (a); see § 11519, subd. (a) [decision is "effective 30 days after it is delivered or mailed to respondent unless: a reconsideration is ordered within that time, or the agency itself orders that the decision shall become effective sooner, or a stay of execution is granted"].) In short, the

11

power to order reconsideration expires 30 days after the decision is served *or* "on the date set by the agency itself as the effective date of the decision," whichever is earlier. As the Department points out, decisions going back decades confirm the clear meaning of this language. (E.g., *Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1262; *Eichman v. Escondido Union High School Dist.* (1964) 61 Cal.2d 100, 102; *Moran v. Board of Medical Examiners* (1948) 32 Cal.2d 301, 304.)

To decide which alternative date applies, the next step is to determine whether the agency made the effective date of the decision earlier than 30 days after the decision was served. As discussed above, the last page of the Department's decision unambiguously stated that the decision was "effective immediately." Accordingly, under the plain terms of the relevant statutes, reconsideration was unavailable, and the statute of limitations immediately began to run. To believe otherwise, Saint Francis must not have carefully read the Department's decision, the relevant statutes, or both.

We recognize that Saint Francis incorrectly believed that the applicable statute for seeking reconsideration was section 11518.5, not section 11521. But that mistake did not cause Saint Francis to miss the deadline for filing its writ petition, and it therefore does not affect our analysis of whether the late filing was objectively reasonable. Under both statutes, a party cannot seek modification after a decision's "effective date": under section 11518.5, because a party "may apply to the agency for correction" "not later than the effective date of the decision" (§ 11518.5, subd. (a)), and under section 11521, because the agency's "power to order a reconsideration shall expire" no later than "the effective date of the decision." (§ 11521, subd. (a).) Thus, we agree with the Department that Saint Francis's mistake in bringing its request for reconsideration under section 11518.5 instead of section 11521 was

12

ultimately "immaterial," since under either statute the fact that the decision was effective immediately prevented Saint Francis from seeking reconsideration.[8]

Having erroneously concluded that reconsideration was available, Saint Francis filed its request for reconsideration on December 30, two weeks after the decision was served.[9] Nine days later, on January 8, the Department's staff counsel filed an answer on the merits, and on January 14, the Department denied the request on the basis that reconsideration was unavailable. According to Saint Francis, it did not receive the denial until January 22. This was apparently the point at which Saint Francis realized that reconsideration had never been available and that the petition was therefore due on January 15. Saint Francis then promptly filed the original petition on January 26.

>        2.        Saint Francis's legal mistake was not reasonable.

We now turn to whether Saint Francis's actions were objectively reasonable. Drawing a comparison to assessing claims of ineffective

---

[8] Arguably, if a party mistakenly believed that section 11518.5 governed reconsideration, it could then interpret the agency's unilateral power to "modify[] the decision . . . within 15 days after issuance of the decision" (§ 11518.5, subd. (d)) to extend "the last day on which reconsideration can be ordered" (§ 11523) such that a petition seeking review of a decision made "effectively immediately" would be due 45 days, not 30 days, after the decision issued. But that is not the calculation Saint Francis made. In opposing both demurrers and in its original opening brief before this court, Saint Francis maintained that its filing of the request for reconsideration was what extended the deadline by 15 days, not the possibility the Department would modify the decision on its own motion.

[9] Had the Department's decision not been effective immediately, the request would have been timely under section 11518.5, which sets a 15-day deadline from service of a not-yet-effective decision to seek correction. (§ 11518.5, subd. (a).)

13

assistance of counsel, the Supreme Court explained that this standard focuses on whether a "party's actions were fair, proper, and sensible in light of the circumstances." (*Saint Francis*, *supra*, 9 Cal.5th at p. 729, citing *People v. Mai* (2013) 57 Cal.4th 986, 1009 [a "defendant must demonstrate . . . counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms"].) Here, in assessing whether Saint Francis acted reasonably, we take into account that it was represented by counsel throughout the proceedings. (See, e.g., *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 931 (*Collier*) [requirement that plaintiff acted reasonably and in good faith "likewise requires that [plaintiff's] lawyers have acted reasonably and in good faith since they made most of the decisions about whether and what to file"].)

In arguing that its actions were objectively reasonable, Saint Francis relies primarily on a quartet of decisions concluding that equitable tolling applied. First, in *Elkins v. Derby* (1974) 12 Cal.3d 410 (*Elkins*), the plaintiff was injured while working for the defendants and "reasonably and in good faith" filed a workers' compensation claim. (*Id.* at p. 412.) The claim was ultimately denied on the basis that the plaintiff was not "an 'employee' at the time of his injury." (*Ibid.*) He promptly sued the defendants, but the superior court determined the statute of limitations barred the suit because it was not brought within a year of the injury. (*Ibid.*) The Supreme Court held that the statute of limitations was tolled for the period during which the plaintiff pursued his workers' compensation claim, even though he could have simultaneously pursued a civil action. (*Ibid.*)

In *Addison v. State* (1978) 21 Cal.3d 313 (*Addison*), the plaintiffs timely sued the defendants in federal court, alleging claims under federal and state law. (*Id.* at pp. 315–316.) After the statute of limitations for an action in

14

state court expired, the defendants moved to dismiss the federal action for lack of jurisdiction, and the plaintiffs then filed suit in state court. (*Ibid.*) The federal action was subsequently dismissed "without prejudice to the prosecution of the superior court proceeding," but the superior court sustained the defendants' demurrer on the ground that the state complaint was untimely. (*Id.* at p. 316.) Applying equitable tolling, the Supreme Court held that the filing of the federal action suspended the running of the state limitations period. (*Id.* at p. 315.) In concluding that the doctrine's third element of reasonable and good faith conduct "seemingly [was] present," the Court observed, "[T]he federal court, without prejudice, declined to assert jurisdiction over a timely filed state law cause of action and [the] plaintiffs thereafter promptly asserted that cause in the proper state court. Unquestionably, the same set of facts may be the basis for claims under both federal and state law. We discern no reason of policy which would require plaintiffs to file simultaneously two separate actions based upon the same facts in both state and federal courts since 'duplicative proceedings are surely inefficient, awkward and laborious.' " (*Id.* at p. 319.)

In *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88 (*McDonald*), the Supreme Court held that the statute of limitations on a plaintiff's complaint under the California Fair Employment and Housing Act (§ 12900 et seq.) (FEHA) was equitably tolled while the plaintiff pursued the defendant college district's internal procedures governing discrimination complaints. (*McDonald*, at pp. 96–98.) The plaintiff brought her internal complaint within the one-year limitations period, which ran from the date of the wrongful acts, and the internal proceeding was ongoing when she filed the FEHA administrative complaint. (*Id.* at pp. 98–99; see § 12960, subd. (e).) Even though the internal complaint

was voluntary and did not prevent the plaintiff from filing a FEHA complaint, this circumstance did not render equitable tolling unavailable. (*McDonald*, at pp. 101–104.)

Finally, in *Collier*, the plaintiff timely filed a workers' compensation claim after he was injured doing his job as a firefighter. (*Collier*, *supra*, 142 Cal.App.3d at pp. 920–921.) Meanwhile, about four-and-a-half months after the injury, the defendant city fired the plaintiff. (*Id.* at p. 920.) At the time, the fire chief incorrectly advised the plaintiff that he was not entitled to a disability pension because he had not worked for the city long enough. (*Ibid.*) The city code required that a disability pension application be filed within six months from the date of injury, but the city sent such an application to the plaintiff two months later, after the six-month period had expired. (*Id.* at pp. 920, 922.) The plaintiff ultimately filed the application several months later, after the city purported to refund his pension contributions. (*Id.* at pp. 920–921.) The Second District Court of Appeal held that the statute of limitations on the disability pension claim was equitably tolled while the workers' compensation proceeding was pending. (*Id.* at p. 919.)

The decisions on which Saint Francis relies all addressed whether the statute of limitations was equitably tolled while an alternative remedy was pursued. As the Supreme Court noted in *Saint Francis*, equitable tolling "is sufficiently supple 'to "ensure fundamental practicality and fairness," ' " meaning that it may be applied in cases that do not involve the pursuit of an "alternative remedy" at all. (*Saint Francis*, *supra*, 9 Cal.5th at p. 725.) Here, however, Saint Francis has never argued that it is entitled to equitable tolling for some reason other than its filing of the request for reconsideration. Thus, it remains appropriate to analyze Saint Francis's claim primarily

16

within the framework of decisions involving the ultimately unsuccessful pursuit of another remedy.

Initially, we identify two aspects of Saint Francis's actions that *were* objectively reasonable. First, given its erroneous assumption that reconsideration was available, Saint Francis reasonably waited to file its writ petition until after the Department ruled on its request for reconsideration. Although seeking reconsideration or correction of an agency decision is not a prerequisite to filing a petition for a writ of administrative mandate (§§ 11518.5, subd. (a), 11523), case law makes clear that "equitable tolling may extend even to the *voluntary* pursuit of alternate remedies," and a plaintiff need not pursue "duplicative" proceedings to be entitled to it. (*McDonald*, *supra*, 45 Cal.4th at pp. 101–102; see *Addison*, *supra*, 21 Cal.3d at p. 319; *Elkins*, *supra*, 12 Cal.3d at p. 412.)

Second, Saint Francis filed its writ petition reasonably quickly upon learning that its request for reconsideration was denied on the basis that the Department's decision had been effective immediately, meaning the statute of limitations had run. As Saint Francis points out, *Collier* stated that "if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, [its] conduct might be considered unreasonable." (*Collier*, *supra*, 142 Cal.App.3d at p. 926; see *Addison*, *supra*, 21 Cal.3d at p. 319.) We agree with Saint Francis that its "conduct once the mistake was recognized" was reasonable.

Having concluded that these two circumstances do not disqualify Saint Francis from obtaining equitable tolling, we turn to whether the balance of Saint Francis's conduct was objectively reasonable, and we conclude it was not. We previously determined that Saint Francis was not entitled to equitable tolling because its " 'request for reconsideration did not constitute

17

the timely pursuit of an available remedy since reconsideration was unavailable,' " but the Supreme Court explained that an alternative remedy need not be "viable" to support equitable tolling. (*Saint Francis*, *supra*, 9 Cal.5th at p. 725.) Even if the remedy is "futile" or later " 'found to be defective for some reason,' " a plaintiff's pursuit of it may toll the statute of limitations. (*Ibid.*) In other words, if a plaintiff pursues a remedy out of a mistaken belief that it is viable, that mistake does not necessarily establish that the plaintiff's conduct was unreasonable. (*Id.* at pp. 725–726.)

The remedy Saint Francis pursued here, a reconsideration of the Department's decision, is different from the alternative remedies at issue in *Elkins*, *Addison*, *McDonald*, and *Collier*. Unlike a workers' compensation claim, a federal suit, or an internal administrative remedy, reconsideration under the APA is a *precursor* to the triggering of the relevant statute of limitations. Under section 11523, the limitations period for filing a writ petition does not begin to run until "the last day on which reconsideration can be ordered." Thus, it is more accurate to say that reconsideration "affects the antecedent issue of when the [30-day] limit begins to run, not the availability of tolling." (*Nutraceutical Corp. v. Lambert* (2019) 586 U.S. __, 139 S.Ct. 710, 713, 717 [motion for reconsideration of class-certification order cannot support equitable tolling of deadline to appeal order].)[10] Our prior statement

---

[10] Our state Supreme Court's decision cites several federal cases, including on the issue of reasonable and good faith conduct (*Saint Francis*, *supra*, 9 Cal.5th at pp. 720–724, 728–730), and we find it appropriate to do the same. We note, however, that equitable tolling under federal common law has different elements than that under California common law. Namely, a federal "litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way." (*Pace v. DiGuglielmo* (2005) 544 U.S. 408, 418.) In turn, an "extraordinary circumstance" must be "beyond [a litigant's] control" (*Menominee Indian*

18

that reconsideration was not an "available remedy" conveyed not only that Saint Francis's pursuit of it was ultimately unsuccessful but, more fundamentally, that reconsideration was not even an "alternative remedy," at least in any way akin to those at issue in decisions cited by Saint Francis.

By holding that equitable tolling can be applied in cases that do not involve the pursuit of an alternative remedy, the Supreme Court's decision contemplates that equitable tolling might be available when a party mistakenly pursues a remedy that is antecedent to the triggering of the statute of limitations, as reconsideration is here. (*Saint Francis*, *supra*, 9 Cal.5th at p. 725.) But Saint Francis's legal mistake was not objectively reasonable because section 11523 explicitly ties the limitations period to the availability of reconsideration. To the extent that the pursuit of another remedy was a "mistake" in *Elkins*, *Addison*, *McDonald,* and *Collier*, the mistake did not lie in calculating the statute of limitations period for the claim ultimately pursued. The plaintiffs in those cases did not miss the deadline to file suit because they miscalculated that deadline, they missed the deadline because they pursued alternative remedies that turned out not to be viable.

---

*Tribe v. United States*, 577 U.S. __, 136 S.Ct. 750, 756), a standard the action of one's own attorney generally does *not* meet unless the attorney's "professional misconduct . . . amount[s] to *egregious* behavior." (*Holland v. Florida* (2010) 560 U.S. 631, 651, italics added.) Clearly, the conduct of Saint Francis's counsel does not meet this standard. (See, e.g., *Lawrence v. Florida* (2007) 549 U.S. 327, 336 ["counsel's mistake in miscalculating the limitations period" does not qualify as extraordinary circumstance]; *Lombardo v. United States* (7th Cir. 2017) 860 F.3d 547, 554 [attorney's error in determining deadline, "whether the attorney doesn't do enough research, relies on the wrong type of source, or just gets it plain wrong," is not egregious misconduct warranting equitable tolling].)

19

Counsel's mistake here was different, because it lay in missing the significance of the decision's statement that the decision was effective immediately, missing the statutory language saying that reconsideration is unavailable for decisions that are effective immediately, and not extrapolating from these circumstances that the deadline to seek judicial review began running immediately. Thus, we reject Saint Francis's proposed "rule" that a plaintiff's actions are reasonable so long as the plaintiff mistakenly "choos[es] a legal remedy which is a generally recognized option to pursue, even [though] the choice, in retrospect, because of specific facts, was not available." This proposed rule does not account for whether the legal mistake itself was objectively reasonable, which we conclude the mistake here was not. (See *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657.)

The only aspect of this case that distinguishes it from any other in which counsel simply failed to ascertain the applicable limitations period is that the mistake "appears to have been shared by the Department"—at least, by staff counsel for the Department.[11] (*Saint Francis*, *supra*, 9 Cal.5th at p. 731.) Saint Francis argues that the Department "created the confusion for both counsel" by making the decision effective immediately and that this "is a factor which is relevant to deciding whether [Saint Francis] acted reasonably." Although we can imagine circumstances under which the fact that the attorney for the opposing party made the same legal mistake might

---

[11] The APA "strictly limit[s] contacts between an agency's prosecutor and the officers the agency selects to preside over hearings and ultimately decide adjudicative matters." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 5.) Although neither party addresses the issue, this principle raises questions about the extent to which staff counsel's mistake can be attributed to the Department or could have reasonably misled Saint Francis.

suggest that a mistake was objectively reasonable, the operative petition here simply provides no basis for inferring that the Department created any particular "confusion" by making its decision effective immediately.

The Supreme Court's opinion suggests that an email exchange between the parties' counsel might also bear on whether Saint Francis's actions were objectively reasonable, because it shows that Saint Francis's "mistake about the filing deadline under section 11523 . . . appears to have been shared by the Department." (*Saint Francis*, *supra*, 9 Cal.5th at p. 731.) This exchange involved an email from Saint Francis's counsel sent on January 14, 2016, and a response from the Department's staff counsel sent on January 19. (*Id*. at p. 718.) Even if we assume this exchange is properly before us, it does not support a determination that Saint Francis's actions were objectively reasonable.[12] It is true that we can infer from the Department's answer on the merits to the request for reconsideration that, at least until the request was denied, staff counsel also mistakenly believed that reconsideration was available. But we can infer little from this attorney's January 19 email to Saint Francis, because it was not sent until *after* the deadline for filing the petition had passed, and it therefore did not cause Saint Francis to miss that deadline.

In any event, figuring out the correct deadline was a relatively simple matter of reading the decision and the applicable statutes, and the fact that *two* attorneys failed to pay close attention does not seem to us to make the mistake any more reasonable. This is especially true because Saint Francis had far more incentive to be careful than did the Department's staff counsel,

---

[12] Saint Francis attached copies of these emails as an exhibit to its opposition to the demurrer to its original petition, but in amending the petition Saint Francis did not add allegations about the exchange or attach copies of the emails.

as incorrectly calculating the deadline could negatively impact only Saint Francis's rights.

Finally, our conclusion that Saint Francis's actions were not objectively reasonable is consistent with the Supreme Court's admonition that "[e]quitable tolling applies only 'in carefully considered situations to prevent the unjust technical forfeiture of causes of action.' [Citation.] It does not . . . 'extend to . . . garden variety claim[s] of excusable neglect.' . . . Limiting the doctrine's applicability to only those cases in which a party demonstrates objective reasonableness and subjective good faith precludes the doctrine from being 'a cure-all for an entirely common state of affairs,' while ensuring that it provides a narrow form of relief in 'unusual circumstances' when justice so requires." (*Saint Francis*, *supra*, 9 Cal.5th at pp. 729–730.) Saint Francis's counsel could have easily determined the applicable deadline by paying attention to the wording of the decision and a few relatively brief statutes, and the Department's failure to correct him did not render the mistake objectively reasonable. If these circumstances do not present a " 'garden variety claim[] of excusable neglect' " (*id.* at p. 730), we do not know what would.

### III.
### DISPOSITION

The judgment is affirmed. Neither party is awarded costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(5).)

_____

Humes, P.J.

WE CONCUR:



_____

Banke, J.



_____

Sanchez, J.



*Saint Francis Memorial Hospital v. State Dept. of Public Health*  A150545

23

Trial Court:

      Superior Court of the County of San Mateo


Trial Judge:

      Hon. George A. Miram


Counsel for Plaintiff and Appellant:

      Cyrus A. Tabari, Sheuerman, Martini, Tabari, Zenere & Garvin


Counsel for Defendant and Respondent:

      Xavier Becerra, Attorney General

      Cheryl L. Feiner, Senior Assistant Attorney General

      Gregory D. Brown, Supervising Deputy Attorney General

      Cristina M. Matsushima, Deputy Attorney General


*Saint Francis Memorial Hospital v. State Dept. of Public Health*  A150545