[No. G015019. Fourth Dist., Div. Three. Nov. 20, 1995.]

STRUCTURAL STEEL FABRICATORS, INC., Plaintiff and Respondent,
v.
CITY OF ORANGE, Defendant and Appellant.

## COUNSEL

Ernest Brown and Michael K. Wolder for Defendant and Appellant.

Ralph T. Evans for Plaintiff and Respondent.

## OPINION

**SONENSHINE, Acting P. J.**—This is the second appeal arising out of litigation between Structural Steel Fabricators, Inc. (Structural) and the City of Orange. In the first, *Structural Steel Fabricators, Inc. v. City of Orange* (1991) 234 Cal.App.3d 1206 [286 Cal.Rptr. 24], we reversed a summary judgment in favor of the city on its Civil Code section 3210[1] statute of limitations defense to Structural's action to enforce a stop notice.[2] We found there was a triable issue of fact whether Structural could rely on an estoppel theory to extend the time for filing its action. In a footnote, we declined "[to] reach Structural's alternative argument that the doctrine of equitable tolling is applicable." (*Structural Steel Fabricators, Inc. v. City of Orange, supra,* 234 Cal.App.3d at p. 1212, fn. 10.) However, we noted such a position might have merit. (*Ibid.*) We remanded the case for further proceedings.

Following trial of the action, the court ruled Structural failed to prove estoppel, but found the action timely by virtue of equitable tolling of the

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

[2]A stop notice is "a written notice, signed and verified by the claimant or his or her agent, stating in general terms" specified information relating to the claim arising out of services or materials furnished to the person against whom the claim is being made. (§ 3103.)

statute of limitations while Structural pursued its claim against the general contractor and the bonding company. The city's appeal squarely presents the issue we had no need to decide in our prior decision. We affirm and publish our opinion in light of the dearth of law on the subject.

FACTUAL AND PROCEDURAL BACKGROUND

We recite a portion of the background as set forth in our prior published opinion.

"In February 1988, Structural, as subcontractor, entered into a contract with IDC Construction (IDC), as general contractor, to perform structural steel fabrication for the City of Orange. In October, IDC walked off the job site, and Contractor Surety Bonding Company (CSBC) assumed its role. Structural received partial payment from CSBC; however, CSBC left before Structural was paid in full.

"On January 4, 1989, Structural served a stop notice upon the city, demanding that it withhold the sum of $30,086 from CSBC. Instead, the city permitted CSBC to 'bond around'[3] the stop notice.

"On May 26, Structural filed a lawsuit against IDC and CSBC. In September, Structural obtained a $27,350 default judgment. A month earlier, however, IDC filed a chapter 7 bankruptcy proceeding and CSBC went out of business.

"Meanwhile, on June 21, 1989, while its lawsuit against IDC and CSBC was pending, Structural made a demand upon the city, claiming the sum of $24,894 was due. A corrected demand was served on June 27, indicating the proper amount was $30,086.

"On November 6, Structural filed a separate lawsuit against the city to enforce the stop notice. In its first amended complaint filed in June 1990, Structural alleged the city 'has either paid the money due Plaintiff to the unlicensed bonding company or still retains the money.' It admitted the statute of limitations to enforce the stop notice had expired on July 4, 1989;

---

[3]Under section 3186, when a public entity receives a stop notice, it must "withhold from the original contractor . . . money or bonds (where bonds are to be issued in payment for the work of improvement) due or to become due to such contractor in an amount sufficient to answer the claim stated in such stop notice . . . ." However, the public entity does not necessarily have to withhold the sum demanded; instead, it may permit the original contractor to file a bond in an amount equal to 125 percent of the claim. Here, the city chose the latter option.

however, it claimed that the city's conduct had tolled the statute." (*Structural Steel Fabricators, Inc.* v. *City of Orange, supra,* 234 Cal.App.3d at pp. 1208-1209, fns. omitted.)

Following this court's reversal of the city's summary judgment, the case was tried on its merits. The court found in favor of Structural based on the theory the statute of limitations was subject to equitable tolling while Structural, "in good faith, pursued a claim first against the general contractor and the bonding company."

We need not concern ourselves with dates. All parties agree if tolling occurred, the action was timely; they also agree that without tolling, the section 3210[4] statute of limitations expired four months before the suit was filed.

## Discussion

■ The city contends equitable tolling is generally inappropriate in suits to enforce stop notices and is specifically not applicable here because of the absence of requisite elements. We disagree on both counts.[5]

[4]Section 3210 provides, "An action against the original contractor and the public entity to enforce payment of the claim stated in the stop notice may be commenced at any time after 10 days from the date of the service of the stop notice upon the public entity and shall be commenced not later than 90 days following the expiration of the period within which stop notices must be filed as provided in Section 3184." Section 3184 requires service of a stop notice within 30 days after recording a notice of completion or notice of cessation of the contracted work, if such notice is recorded. If the notice of completion or cessation is not recorded, the stop notice must be served within 90 days after completion or cessation.

[5]The city cites no authority for its argument that as a matter of public policy, equitable tolling for pursuit of other remedies should not be applied in actions to enforce stop notices. It contends tolling would be "unworkable in practice" because the city needs to know the last day for filing suit with certainty in order to set certain dates for release of final retention payments to the prime contractors. The city reasons if the statute of limitations is subject to tolling, public agencies would have to retain "some portion of the contractors['] retention in an escrow account for some indeterminate period of time, thereby frustrating the very purpose the statutes were enacted to further."

Naturally, there are practical inconveniences attendant to tolling in every situation. We discern nothing particularly unique about the circumstances here, and certainly no policy considerations of sufficient concern to override the "several important public policy considerations" underlying the doctrine of equitable tolling. (*Collier* v. *City of Pasadena* (1983) 142 Cal.App.3d 917, 926 [191 Cal.Rptr. 681].) To wit, tolling "secures the benefits of the statutes of limitation for defendants without imposing the costs of forfeiture on plaintiffs. Secondly, it avoids the hardship upon plaintiffs of being compelled to pursue simultaneously several duplicative actions on the same set of facts. Thirdly, it lessens the costs incurred by courts and other dispute resolution tribunals, at least where a disposition in the case filed in one forum may render the proceeding in the second unnecessary or easier and cheaper to resolve." (*Ibid.,*

In *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941], the Supreme Court concluded the filing of a federal district court action suspended the running of the six-month statute of limitations within which to bring a suit against a public entity in state court. In doing so, it applied "the well established doctrine of 'equitable tolling' " (*id.* at p. 316) to relieve the plaintiff of an otherwise untimely filing of a personal injury action. The *Addison* court stated, "It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available. . . . The statutes . . . serve a distinct public purpose, preventing the assertion of demands which through the unexcused lapse of time, have been rendered difficult or impossible to defend. However, courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he [or she], reasonably and in good faith, pursues one designed to lessen the extent of his [or her] injuries or damage." (*Addison* v. *State of California, supra,* 21 Cal.3d at p. 317.) Citing a 30-year-old precedent, it added, " '[T]his court is not powerless to formulate rules of procedure where justice demands it. Indeed, it has shown itself ready to adapt rules of procedure to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits.' " (*Id.* at pp. 318-319.)

Even before *Addison,* the California Supreme Court approvingly alluded to "a line of relatively recent California cases which points toward the principle that regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' [Citations.]" (*Elkins* v. *Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81].) As we noted in our prior decision in this case, equitable tolling serves a laudable purpose: "The doctrine . . . 'has been applied to soften the harsh impact of such technical rules [as mandatory prescribed statutes of limitations] when to do so would allow a good faith litigant to have his [or her] day in court.' " (*Structural Steel Fabricators, Inc.* v. *City of Orange, supra,* 234 Cal.App.3d at p. 1212, fn. 10.)

Equitable tolling has three elements: "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the

---

fns. omitted.) And, of course, if Structural *had* named the city as a defendant in the action against the contractor and the bonding company, the city would have demurred and sought dismissal on the ground the stop notice funds were bonded around. It was clearly to the city's benefit that Structural pursued IDC Construction (IDC) and Contractor Surety Bonding Company (CSBC) first.

plaintiff." (*Addison* v. *State of California, supra,* 21 Cal.3d at p. 319.)[6] The court in *Collier* v. *City of Pasadena, supra,* 142 Cal.App.3d at pages 924-926 defined those elements: "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." (*Id.* at p. 924.) The second element involves prejudice to the defendant from "stale claims and deteriorated evidence." (*Id.* at p. 925.) It "translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him [or her] in a position to fairly defend the second." (*Ibid.*) Absolute identity is not required; rather, the claims must be "based on essentially the same set of facts" to alert the defendant to timely investigate the first claim and "put [him or her] in position to appropriately defend the second." (*Ibid.*) As for the third element, the *Collier* court found good faith and reasonable conduct "less clearly defined in the cases" (*id.* at p. 926), but reasoned long delay "even after crediting the tolled period . . . might be considered unreasonable" (*ibid.*) or intentionally lulling "the defendant into believing the second claim would not be filed . . . might be deemed to constitute bad faith." (*Ibid.*)

 The three elements of equitable tolling are undeniably present here. In October 1988, the original general contractor, IDC, walked off the jobsite and its bonding company, CSBC, took over its role. CSBC paid Structural part of the monies owed, but the payment was about $30,000 short. On January 4, 1989, Structural filed its stop notice with the city; shortly thereafter, the city accepted a bond from CSBC pursuant to section 3196. CSBC then abandoned the project without paying Structural in full. Structural filed a lawsuit against IDC and CSBC in May; in September, it obtained default judgments which proved to be valueless. The contractor was bankrupt; the bonding company had ceased doing business and was not licensed in California as an insurance company, meaning Structural's claim would not be paid by the California Insurance Guarantee Association. (See Ins. Code, § 1063.) Meanwhile, in May and again in June, during the pendency of the lawsuit against IDC and CSBC, Structural made demand on the city for the amount due. Finally, on November 6, a few days before it

---

[6]At least one court has expressed doubt "whether the Supreme Court would insist on all three prerequisites." (*Collier* v. *City of Pasadena, supra,* 142 Cal.App.3d at p. 924, fn. 5.) The *Collier* court observes, "The policy rationale of *Elkins* and *Addison* suggests that in an appropriate case a statute of limitations might be equitably tolled where only the second prerequisite [prejudice] was fulfilled. But it is difficult to imagine a situation where the defendant had a full opportunity to gather evidence relevant to the second claim unless the other two prerequisites also were satisfied." (*Ibid.*)

gave up trying to execute on the worthless judgment against IDC and CSBC, Structural filed the action against the city to enforce the stop notice.

Structural had no choice but to sue CSBC. When a public entity "bonds around" a stop notice, as was the case here, section 3264 states that the stop notice rights are the *only* rights a subcontractor has against the holder of the construction fund; that is, the city's liability arises solely out of its duties as a stakeholder of the funds withheld pursuant to the stop notice. The city argues Structural's claim against it did not alert it to investigate the facts forming the basis for the claim; on the contrary, it contends that once it accepted the bond from CSBC, it was no longer a stakeholder of the funds, thus, if anything, it could rest assured it had no potential liability to Structural. The argument is conveniently disingenuous. Structural's attorney advised the city by letter dated May 17, "[W]e recently filed a subcontractor's construction collection action against I.D.C. and your surety (Contractor's Surety Bonding Co.). We hear now that your surety was not a proper surety and that they may be unable to protect the job. Is there another surety? We had a stop notice and need to know for sure who we should be suing. If your surety was not a properly registered surety with the insurance authorities, it might also create liability back upon the city (although we haven't researched this yet.) Please respond as soon as possible." Clearly, the city had notice sufficient to meet the first element of equitable tolling.

Does the city suffer prejudice from equitable tolling? The city says it does because it paid the money for Structural's work to the prime contractor. Assuming such a payment would constitute the kind of prejudice of concern in equitable tolling (which we need not decide), the city's claim is unsupported by evidence in the record. There is no reporter's transcript, and the parties did not request a written statement of decision. Under the circumstances, we presume all intendments to support the judgment. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

As for the third element, the court expressly found "[p]laintiff, in good faith, pursued a claim first against the general contractor and the bonding company." The city contends this finding is contradicted by evidence Structural "knew that the case against the bonding company and the contractor was fruitless before the statute of limitations had run against the CITY," as shown in the above letter from Structural's attorney in May and the claim letter of June 21, advising the city "[the] bonding company was not a licensed bonding company and [] the City ha[s] thus failed to bond the job as required under the law." We fail to see how Structural's discovery that there were no assets available to pay its judgment against IDC or CSBC conclusively establishes unreasonable delay or bad faith. The issue of good faith

presented a factual inquiry. ■ The city essentially attacks the sufficiency of the evidence to support the court's finding. " '[W]e have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' [Citations]" (*Leff* v. *Gunter* (1983) 33 Cal.3d 508, 518 [189 Cal.Rptr. 377, 658 P.2d 740].) ■ The court did not err in applying the doctrine of equitable tolling to defeat the city's statute of limitations defense.

The judgment is affirmed. Structural shall recover its costs on appeal.

Crosby, J., and Rylaarsdam, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 29, 1996.