Filed 2/2/21  Ramos v. National Steel and Shipbuilding Co. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| EVARISTO RAMOS, | D076008 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2017-00020399-CU-WT-CTL) |
| NATIONAL STEEL AND SHIPBUILDING COMPANY, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Reversed and remanded with directions.

Efaon Cobb for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Vince M. Verde and Tiffany S. Woods for Defendant and Respondent.


Plaintiff Evaristo Ramos appeals from a judgment after the trial court sustained a demurrer by defendant National Steel and Shipbuilding Company (NASSCO) in his action for wrongful termination based on age discrimination in violation of public policy.  On appeal, Ramos contends that the court erred in finding that the doctrine of equitable tolling could not

apply to toll the applicable statutes of limitations based on the factual allegations in his second amended complaint. For the reasons set forth below, we reverse and remand with directions that the court vacate its order sustaining the demurrer and issue a new order overruling the demurrer.

FACTUAL AND PROCEDURAL BACKGROUND

Ramos was hired by NASSCO and worked as a fitter and sheet metal worker for several years, receiving exemplary work evaluations.[1] On December 5, 2013, NASSCO terminated Ramos's employment.

On December 17, Ramos's union, Boilermakers Union, Local 1998, filed a grievance on his behalf, claiming that his termination was in violation of his rights under the collective bargaining agreement (CBA) between the union and NASSCO. On May 9, 2014, his union filed a second grievance on his behalf after it learned that NASSCO had hired subcontractors to fill his position, thereby violating the CBA. The two grievances were merged and the grievance process continued.

On January 13, 2015, during the grievance process, the union discovered that the subcontractors hired to replace Ramos and other NASSCO workers who were terminated on or around the same time as he was, were all under 30 years of age. According to the allegations in the operative complaint, the union then demanded that NASSCO rehire Ramos and pay him his back wages because of its violation of the CBA "and the age of the [sub]contractors violating state law."

---

[1]    In his opening brief, Ramos represents that he was hired by NASSCO in 1995.

2

On February 27, NASSCO offered to rehire Ramos, but refused to pay him back wages. On that date, Ramos returned to work, ending the formal grievance process. However, his union continued informal negotiations with NASSCO to obtain back wages for him.

On October 10, 2015, after NASSCO continued to refuse to pay him back wages, Ramos filed a complaint with the California Department of Fair Employment and Housing (DFEH), alleging, among other things, age discrimination. On June 6, 2016, the DFEH issued a notice of case closure and sent Ramos a right-to-sue letter.

On June 5, 2017, Ramos filed the instant action. After the trial court sustained, with leave to amend, NASSCO's demurrers to his original complaint and first amended complaint, Ramos filed his operative second amended complaint (SAC), alleging the following causes of action: (1) wrongful termination in violation of public policy; (2) age discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (a)[2]); and (3) failure to take all reasonable steps to prevent discrimination and/or harassment in violation of FEHA (§ 12940, subd. (k)). NASSCO demurred to the SAC, arguing that the causes of action were barred by the applicable one-year and two-year statutes of limitations (i.e., §§ 12960, 12965, subd. (b) [one-year statute of limitations]; Code Civ. Proc., § 335.1 [two-year statute of limitations]). Ramos opposed the demurrer, arguing that his causes of action were timely filed because the doctrine of equitable tolling applied to toll the statutes of limitations while he was engaged with NASSCO in the internal grievance process. NASSCO argued in reply that the SAC's

---

[2] All statutory references are to the Government Code unless otherwise specified.

3

allegations showed that the doctrine of equitable tolling was inapplicable and therefore, Ramos's causes of actions were time-barred.

On February 15, 2019, the trial court issued a minute order sustaining NASSCO's demurrer to the SAC, without leave to amend. The court reasoned that the SAC's factual allegations were insufficient to support a finding that the doctrine of equitable tolling applied to toll the statutes of limitations. In particular, the court found that the second element of the equitable tolling three-part test was not satisfied because the SAC did not allege sufficient facts to support a finding that Ramos's two grievances were identical to, or at least so similar to, the SAC's age discrimination claims such that NASSCO was placed in a position to fairly defend those subsequent age discrimination claims. On March 25, the court entered a judgment in favor of NASSCO and dismissed Ramos's action. Ramos timely filed a notice of appeal challenging the judgment.

DISCUSSION

I

*Doctrine of Equitable Tolling*

In the 1970's, the California Supreme Court adopted the doctrine of equitable tolling. (See *Elkins v. Derby* (1974) 12 Cal.3d 410, 412, 417–418 (*Elkins*); *Addison v. State of California* (1978) 21 Cal.3d 313, 316, 318–319 (*Addison*).) "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).) The doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one of those remedies. (*Id.* at p. 100.) Further, "equitable tolling may extend . . . to the *voluntary* pursuit of alternative remedies." (*Id.* at p. 101; see, e.g., *Marcario v. County of Orange* (2007) 155 Cal.App.4th 397,

4

407–409 [equitable tolling applies during pursuit of internal grievance procedure].) In particular, *McDonald* concluded that "FEHA claims may be equitably tolled during the voluntary pursuit of alternative remedies." (*McDonald*, at p. 106.) The court explained that the same legislative policy that favors liberal construction of FEHA statutes of limitations "supports an interpretation of the FEHA under which the limitations period is *equitably tolled while the employee and employer pursue resolution of any grievance through an internal administrative procedure*." (*Id.* at p. 108, italics added.) *McDonald* stated: "By alleviating the fear of claim forfeiture, it affords grievants the opportunity to pursue informal remedies . . . ." (*Id.* at p. 100.) Based on its consideration of past legislative measures, *McDonald* inferred that "the Legislature accepts equitable tolling under the FEHA, including during the period when an aggrieved party's claims are being addressed in an alternate forum, and did not intend section 12960 to foreclose judicial acknowledgement and application of equitable tolling principles." (*Id.* at p. 110.)

Prior to *McDonald*, the California Supreme Court had similarly concluded in *Elkins* that the one-year statute of limitations for filing a personal injury action was equitably tolled for the period during which the plaintiff had pursued his workers' compensation claim. (*Elkins*, *supra*, 12 Cal.3d at pp. 412–413.) *Elkins* reasoned:

> "Defendants' interest in being promptly apprised of claims against them in order that they may gather and preserve evidence is fully satisfied when prospective tort plaintiffs file compensation claims within one year of the date of their injuries. To be sure, an employer notified of a compensation claim may fail to gather evidence of fault, and such evidence could prove critical in a subsequent tort action. [Citation.] The likelihood, however, that the employer will suffer prejudice if the compensation claimant

5

files a tort action more than one year after the date of injury is minimal. *After the filing of a compensation claim, the employer can identify and locate persons with knowledge of the events or circumstances causing the injury.* By doing so, he takes the critical steps necessary to preserve evidence respecting fault. Although he may choose not to gather evidence bearing on fault from these parties when faced only with a compensation claim, he will be able in most instances to recontact these people, particularly if they are continuing employees, for further evidentiary contributions should a controversy as to fault later arise in a tort action." (*Elkins*, *supra*, 12 Cal.3d at pp. 417–418, italics added and fns. omitted.)

*Elkins* continued:

"Furthermore, an employer who suspects that the facts underlying a compensation claim fall near the elusive boundary that separates the claimant's mutually exclusive compensation and tort remedies may well choose to obtain evidence of fault immediately upon the filing of a compensation application even though no court action has yet been initiated. Regardless of whether we recognize a tolling rule, such an employer cannot assume that the claimant will fail to file a timely tort action. *He thus may elect to gather evidence of fault immediately in order to save himself the trouble later.*" (*Elkins*, *supra*, 12 Cal.3d at p. 418, italics added.)

In *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917 (*Collier*), the court concluded that the trial court erred by sustaining the respondent's demurrer because the factual allegations of the petition for writ of mandate challenging the denial of the petitioner's disability retirement benefit claim could support a finding that the one-year statute of limitations for filing a disability pension claim was equitably tolled for the period during which the petitioner had first pursued a workers' compensation claim for an employment-related disability. (*Id.* at pp. 919, 922, 926, 935.) In so doing,

6

*Collier* described the three-part test for application of the doctrine of equitable tolling, stating:

> "[The] three-core elements are: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." (*Collier, supra,* 142 Cal.App.3d at p. 924, fn. omitted.)

Discussing the first element, *Collier* stated:

> "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore *the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim.* Generally this means that the defendant in the first claim is the same one being sued in the second. As an example, a workers' compensation claim equitably tolls a personal injury action against that same employer for injuries sustained in the same incident." (*Collier, supra,* 142 Cal.App.3d at pp. 924–925, italics added.)

Regarding the second element, *Collier* stated:

> "The second prerequisite essentially translates to a requirement that *the facts of the two claims* be identical or at least *so similar* that the defendant's investigation of the first claim will put him in a position to fairly defend the second. Yet the two 'causes of action' need not be absolutely identical. *The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim. . . .* So long as the two claims are *based on essentially the same set of facts* timely investigation of the first claim should put the defendant in position to appropriately defend the second [claim]. Once he is in that position the defendant is adequately protected from stale claims and deteriorated evidence. In terms of the underlying policies of the statutes of limitation, it is irrelevant whether those two claims are alternative or

7

parallel, consistent or inconsistent, compatible or incompatible." (*Collier*, *supra*, 142 Cal.App.3d at pp. 925–926, italics added and fn. omitted.)

Finally, regarding the third element, *Collier* stated: "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in [*Addison*,] the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended. Perhaps, if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be considered unreasonable. [Citation.] Or if the plaintiff deliberately misled the defendant into believing the second claim would not be filed, that action might be deemed to constitute bad faith." (*Collier*, *supra*, 142 Cal.App.3d at p. 926.)

*Collier* described the policy considerations underlying the doctrine of equitable tolling, stating:

> "First, it secures the benefits of the statutes of limitation for defendants without imposing the costs of forfeiture on plaintiffs. Secondly, it avoids the hardship upon plaintiffs of being compelled to pursue simultaneously several duplicative actions on the same set of facts. Thirdly, it lessens the costs incurred by courts and other dispute resolution tribunals, at least where a disposition in the case filed in one forum may render the proceeding in the second unnecessary or easier and cheaper to resolve." (*Collier*, *supra*, 142 Cal.App.3d at p. 926, fns. omitted.)

Based on the facts of its case, *Collier* found, in particular, that the second element for equitable tolling was satisfied because the "essential factual elements" of the workers' compensation claim and the subsequent disability pension action were "nearly identical" and therefore, the defendant was not

8

prejudiced in gathering evidence that may have been needed to defend the second action. (*Collier*, *supra*, 142 Cal.App.3d at p. 929.)

In construing California's doctrine of equitable tolling, *Lucchesi v. Bar-O Boys Ranch* (9th Cir. 2003) 353 F.3d 691 (*Lucchesi*), at page 695, stated: "The fact that two claims may be separate, distinct and independent insofar as they are founded upon different laws, involve different procedures or seek different remedies does not compel the conclusion that they arise from separate wrongs." *Lucchesi* observed: "California law does not require that the two claims seek the same remedies, involve the same procedures, or arise from the same laws in order for equitable tolling to apply." (*Ibid.*)

In *Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, this court concluded: "[W]hether a plaintiff has demonstrated the elements of equitable tolling presents *a question of fact*."[3] (*Id.* at p. 755, italics added; see also *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1012 ["we are hard pressed to think of more fact-specific issues than 'accrual' and 'tolling' "]; *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 434 ["Equitable tolling is a fact intensive issue and it is determined based upon evidence"]; *Campbell v. Graham-Armstrong* (1973) 9 Cal.3d 482, 490 ["Plaintiffs' [equitable tolling] theory . . . requires a factual determination as to whether they reasonably and in good faith pursued their remedies"].) Accordingly, "[u]nder California's equitable tolling test, 'similarity' is less a legal conclusion and more *a factual exploration* of the contentions and evidence relevant to each claim. As such, 'similarity' is *not easily resolved as a matter of law, without*

---

3    In *Hopkins*, we also concluded that the factual determination whether the doctrine of equitable tolling applies must be made by a trial court and not a jury. (*Hopkins v. Kedzierski*, *supra*, 225 Cal.App.4th at pp. 745–746.)

9

*receiving evidence."* (*Cervantes v. City of San Diego* (9th Cir. 1993) 5 F.3d 1273, 1276 (*Cervantes*), italics added.) On that point, *Cervantes* stated:

> "[E]ach of the three factors in California's test for equitable tolling requires a *practical* inquiry. At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstances of the prior claim: parties involved, issues raised, evidence considered, and discovery conducted. Thus, the question ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a [demurrer or] [Federal Rules of Civil Procedure] Rule 12(b)(6) motion, where review is limited to the complaint alone. [Citations.]" (*Cervantes*, *supra*, 5 F.3d at p. 1276, fn. omitted.)

"California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." (*Cervantes*, *supra*, 5 F.3d at p. 1276.) Therefore, in cases where a demurrer to a complaint is based on a statute of limitations and the plaintiff argues the doctrine of equitable tolling applies, "[t]he sole issue is whether the complaint, liberally construed . . . , adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine." (*Id.* at p. 1277.) Accordingly, "ordinarily equitable tolling is not properly resolved at the pleading stage." (*Ibid.*)

## II

### *Trial Court's Order Sustaining NASSCO's Demurrer*

Ramos asserts that the trial court erred by sustaining NASSCO's demurrer to the SAC after concluding that the SAC's factual allegations could not support a finding that the doctrine of equitable tolling applied to toll the applicable statutes of limitations.

10

A

In his SAC, Ramos alleged causes of action for: (1) wrongful termination in violation of public policy; (2) age discrimination in violation of the FEHA; and (3) failure to take all reasonable steps to prevent discrimination and/or harassment in violation of FEHA. NASSCO demurred to the SAC, arguing that the causes of action were barred by the applicable one-year and two-year statutes of limitations. In opposition, Ramos argued that his causes of action were timely filed because the doctrine of equitable tolling applied to toll the applicable statutes of limitations while he was engaged with NASSCO in the internal grievance process. In reply, NASSCO argued that the SAC's allegations showed that the doctrine of equitable tolling was inapplicable and therefore, its causes of actions were time-barred.

At the hearing on NASSCO's demurrer to the SAC, the trial court initially noted that the issue of age discrimination was not raised as part of Ramos's two grievances. Ramos's counsel argued that the facts in the two grievances and the SAC were the same -- namely, "[t]he fact that my client was wrongfully terminated." He argued that case law did not require that Ramos's grievances allege the same legal basis as he alleged for relief in the SAC. Ramos's counsel argued that because Ramos's two grievances alleging his wrongful termination gave NASSCO ample time to gather evidence and preserve it for his subsequent claims, equitable tolling should apply. Counsel further argued that the two grievances "would have still put [NASSCO] on notice to investigate the underlying termination of my client and subsequent [hiring] of subcontractors in place of my client. [¶] [T]he underlying facts still have to be evaluated. It still gives [NASSCO] the opportunity to gather evidence, to preserve evidence while it's still fresh."

11

Ramos's counsel represented that age discrimination was not the basis of Ramos's two grievances because the CBA did not cover instances of discrimination. The court then asked: "[I]f the CBA doesn't even cover [an age discrimination] claim, how could the filing of the grievance[s] toll the statute?" Ramos's counsel argued that based on the two grievances, NASSCO had an opportunity to preserve evidence for its defense of the subsequent age discrimination action.

The trial court asked Ramos's counsel: "But why would [NASSCO] be preserving evidence about a claim [i.e., for wrongful termination based on age discrimination] that was never asserted [in the two grievances]? . . . [W]hy would [NASSCO] go out and interview and find out the age of everybody [i.e., the subcontractors]?" Ramos's counsel replied: "It's simply the fact that *both claims involve the* nexus, the cluster of *facts of my client being terminated* and then being rehired. [¶] So [NASSCO had] the opportunity to evaluate why my client was terminated and evaluate the basis for the rehiring of these individuals. . . . [¶] The *reasons for the termination* and the rehiring are the crux of both claims. [The two grievances gave NASSCO] *ample opportunity to gather the evidence* to address both claims." (Italics added.)

Conceding that it did not understand the grievance procedure "all that well," the court stated: "[I]t has to be the same wrong, which is the [age] discrimination [for equitable tolling to apply]." Noting that Ramos's two grievances alleged violations of the CBA, the court observed that the SAC alleged age discrimination and stated, "I don't see how [NASSCO was] on notice to have investigated that based on those earlier claims. [¶] And the facts used to prove the discrimination are different from whatever facts would prove the hiring of these other people, these outside contractors and that sort of thing." Ramos's counsel argued: "[W]hen the grievance[s] [were]

12

filed, [NASSCO was] able to take in all the evidence related to why [it] terminated my client, and then subsequently the basis for why [it] hired these new workers. And that will be their defense in a wrongful termination claim that was filed subsequently." He argued: "[T]he orientation of [NASSCO's] investigation is not a point of analysis in these cases. It's just whether the defense was given the opportunity to gather the evidence and preserve it while it was still fresh." NASSCO's counsel interjected, arguing that NASSCO was "never put on notice of the actual discrimination claim [by the two grievances], which is what the case law requires in equitable tolling." The court agreed and sustained NASSCO's demurrer. In its minute order sustaining NASSCO's demurrer, the court stated that the SAC's factual allegations were insufficient to support a finding that the doctrine of equitable tolling applied to toll the statutes of limitations. The court entered a judgment in favor of NASSCO and dismissed Ramos's action against it.

B

A demurrer challenges the legal sufficiency of a complaint. (*Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 306.) On appeal from a judgment after a trial court sustains a demurrer based on a statute of limitations defense, we review the complaint de novo, or independently, to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "[A]ll material facts properly pleaded and those which arise by reasonable implication therefrom are deemed true." (*Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444.) We also review de novo, or independently, any questions of law, such as the scope and meaning of the three-part test for application of the doctrine of equitable tolling. (*Cantu*, at

13

p. 879; cf. *Lucchesi*, *supra*, 353 F.3d at p. 694.) A trial court reversibly errs "when it sustains a demurrer without leave to amend where [the plaintiff] has alleged facts showing entitlement to relief under any possible legal theory." (*Platt*, at p. 1444; *Blank*, at p. 318.)

## C

Based on our independent review of the SAC, we conclude that the trial court erred in determining, as a matter of law, that the SAC's factual allegations could not possibly support a finding that the doctrine of equitable tolling applied to preclude the statutes of limitations from barring Ramos's causes of action. Considering the three-part test for application of the doctrine of equitable tolling, we conclude that the SAC adequately alleges facts showing the potential applicability of equitable tolling. (*Collier*, *supra*, 142 Cal.App.3d at pp. 924–926.)

*First element*. Regarding the first element of timely notice to NASSCO in Ramos's filing his first claim, i.e., the two grievances, we initially focus on whether Ramos *timely* filed his first grievance. (*Collier*, *supra*, 142 Cal.App.3d at p. 924.) Ramos filed his first grievance within two weeks of the termination of his employment. There is nothing in the SAC's allegations that shows that a two-week delay in filing that grievance was untimely under the CBA or otherwise and precluded Ramos from pursuing that grievance. Also, because Ramos's second grievance was filed five months later, while the first grievance was still being processed, there is nothing showing that the filing of that second grievance, which was merged with his first grievance, was untimely. Further, the SAC's allegations do not show that the filing of Ramos's two grievances could not have alerted NASSCO of its need to begin investigating the underlying facts relevant to its defense of Ramos's subsequent action for wrongful termination based on age

14

discrimination in violation of public policy.  (*Ibid.*)  Accordingly, although the trial court found its ruling on the second element dispositive and therefore did not address the first element, we conclude, at the demurrer stage and based solely on the SAC's allegations, that a court could not find that the first element for equitable tolling was not satisfied.

*Second element.*  Regarding the second element of the three-part test for application of the doctrine of equitable tolling, we focus on whether the SAC's allegations show, as a matter of law, that NASSCO was prejudiced in gathering evidence to defend against Ramos's second claim, i.e., the instant action.  (*Collier, supra,* 142 Cal.App.3d at p. 925.)  In so doing, we consider whether the SAC's allegations could support a finding that the underlying facts of Ramos's two claims were identical or at least so similar that NASSCO's investigation of Ramos's two grievances could have placed it in a position to fairly defend his subsequent claim for wrongful termination based on age discrimination.  (*Ibid.*)  As *Collier* stated:  "*The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim. . . .*  So long as the two claims are *based on essentially the same set of facts* timely investigation of the first claim should put the defendant in position to appropriately defend the second [claim]."  (*Ibid.*, italics added.)  We must therefore consider whether the SAC's allegations show, as a matter of law, that Ramos's two grievance claims could have afforded NASSCO an opportunity to identify evidence that could be used to defend against Ramos's subsequent claim for wrongful termination based on age discrimination.  (*Ibid.*)

Based on our review of the SAC's allegations, we conclude that determination of prejudice to NASSCO cannot be made at the demurrer stage. In paragraphs 9 and 10 of the SAC, Ramos alleged that NASSCO terminated his employment and that 12 days later, his union filed a grievance claiming that his termination violated the CBA. In paragraph 11 of the SAC, Ramos alleged that his union filed a second grievance five months later, after it learned that NASSCO had hired subcontractors to replace him and other workers, thereby violating the CBA. It further alleged that the two grievances were merged together for processing because there was a nexus between his termination and NASSCO's subsequent hiring of subcontractors to replace him. Paragraph 12 of the SAC alleged that in January 2015, which was "*during the grievance process*," his union "discovered for the first time that the subcontractors hired to replace [him], along with every other worker terminated on or around the same date [of his termination], were all under 30 years of age, and continued to work there." (Italics added.) Importantly, paragraph 12 further alleged: "*The Union demanded that [NASSCO] rehire [Ramos]*, and that all of [Ramos's] back wages be paid *due to* the subcontracted replacements violating the CBA, and *the age of the contractors violating state law*." (Italics added.) Paragraphs 13 through 15 of the SAC alleged that through the grievance process, NASSCO rehired Ramos in February 2015, but refused to pay him back wages, and NASSCO and his union continued informal negotiations thereafter regarding payment of his back wages. Paragraph 16 alleged that after NASSCO unequivocally refused to pay Ramos his back wages and, based on his belief that his claims were equitably tolled during the grievance process, Ramos filed his complaint with DFEH in October 2015, alleging, among other things, age discrimination.

At the demurrer stage of these proceedings, lacking any evidence other than the SAC's factual allegations that are assumed to be true, the trial court had no factual basis on which it could conclude that NASSCO was, in fact, prejudiced under the second element of the equitable tolling doctrine.[4]  In particular, the SAC's allegations do not support a finding that, based on the grievances filed by Ramos's union, NASSCO necessarily had no opportunity to investigate the reasons for its termination of Ramos and/or to obtain evidence that it could have preserved and used in its defense of his subsequent action for wrongful termination based on age discrimination.  The SAC's allegations do not specify the exact nature and scope of the grievance process as it proceeded from its initiation through its completion, nor do they detail what steps NASSCO took, or could have taken, during the grievance process in investigating its termination of Ramos's employment.

If the instant proceedings were to continue beyond the demurrer stage, e.g., to summary judgment proceedings or a bench trial, evidence would presumably be submitted that would better inform the trial court as to the facts underlying Ramos's two grievances and those underlying the SAC; the court would then be in a position to determine, based on this evidence, whether the second equitable tolling element is met, i.e., whether, as a result of the two grievances, NASSCO had an opportunity to investigate its reasons for Ramos's termination and thereby identify evidence that could be used to

---

[4]     At the hearing on NASSCO's demurrer, the trial court found that Ramos's two grievances alleging violations of the CBA could not have notified NASSCO to investigate a claim of age discrimination stating, "[T]he facts used to prove the discrimination are different from whatever facts would prove the hiring of these other people, these outside contractors and that sort of thing."  However, at the demurrer stage, the court did not have any evidentiary basis for this finding.

17

defend against his subsequent claim for wrongful termination based on age discrimination.[5] (*Collier*, *supra*, 142 Cal.App.3d at p. 925.)

Further, considering solely the SAC's allegations at this demurrer stage and disregarding the contrary representation by Ramos's counsel at the hearing on the demurrer, it appears that there could be support for a finding that the issue of age discrimination did in fact arise during the grievance process. As noted, paragraph 12 of the SAC alleged that "during the grievance process," "[t]he Union demanded that [NASSCO] rehire [Ramos] . . . due to . . . the *age* of the [subcontractors] *violating state law*." (Italics added.) That allegation supports a reasonable inference that NASSCO was placed on notice during the grievance process that Ramos was arguing, in part, that its termination of his employment violated state law barring age discrimination. If NASSCO was, in fact, placed on notice of that age discrimination allegation during the grievance process, a court could reasonably find that NASSCO had an opportunity to investigate the reasons for its termination of Ramos and, in particular, whether one of its reasons was discrimination based on his age and thus, that the second element of equitable tolling is met.

---

5  Conceivably, during the grievance process, NASSCO could have, or arguably should have, investigated its reasons for terminating Ramos's employment. In the course of any such investigation, NASSCO would presumably find evidence showing that there were only valid, legitimate reasons to terminate Ramos or instead, that a substantial reason for its termination of Ramos was its age discrimination or another wrongful basis. If, on the basis of the two grievances filed by Ramos, NASSCO, in fact, had an opportunity to investigate its reasons for terminating his employment, it may have been able to collect and preserve that evidence for its defense of any possible second claim Ramos may file based on the underlying facts of its termination of his employment, e.g., claim for wrongful termination based on age discrimination in violation of public policy.

18

However, at the demurrer stage, based solely on the SAC's allegations without any evidentiary record, a court is not in a position to make a finding whether, as a result of Ramos's two grievances, NASSCO did, in fact, have an opportunity to investigate its reasons for its termination of his employment and thereby identify evidence that could be used to defend against his subsequent claim for wrongful termination based on age discrimination. (*Collier*, *supra*, 142 Cal.App.3d at p. 925.) Accordingly, we conclude that the trial court erred by finding, based solely on the SAC's allegations, that the second element for equitable tolling was not satisfied.

*Third element*. Regarding the third element for application of the doctrine of equitable tolling, we focus on Ramos's good faith and reasonable conduct in filing the instant action for wrongful termination based on age discrimination. (*Collier*, *supra*, 142 Cal.App.3d at p. 926.) There is nothing in the allegations of the SAC to indicate that Ramos acted in bad faith or unreasonably in filing the instant action. The SAC's allegations do not show indisputably that Ramos waited too long after the grievance process ended to file his DFEH complaint or too long after he received the DFEH's right-to-sue letter to file the instant action, nor does it show that he misled NASSCO into believing that he would not file the instant action. (*Ibid*.) At the demurrer stage, based solely on the SAC's allegations without any evidentiary record, the record is not sufficient to permit a court to make a finding as to whether Ramos acted in bad faith or unreasonably in filing his action for wrongful termination based on age discrimination. (*Ibid*.) Accordingly, although the trial court found its ruling on the second element dispositive and therefore did not address the third element, we conclude, at the demurrer stage and based solely on the SAC's allegations, that a court could not find that the third element for equitable tolling was not satisfied.

19

As noted above, in making a determination on the applicability of equitable tolling, a court must conduct a *practical* inquiry regarding each of the three elements. (*Cervantes*, *supra*, 5 F.3d at p. 1276.) In so doing, a court must, at a minimum, consider evidence regarding the *specific* circumstances of the prior claim, such as the parties involved, issues raised, evidence considered, and discovery conducted. (*Ibid.*) In evaluating that evidence, the *critical question* for the court is whether *notice of the first claim* afforded the defendant an *opportunity* to identify evidence that might be needed to defend against the second claim. (*Collier*, *supra*, 142 Cal.App.3d at p. 925.) Because the determination of whether equitable tolling applies in a particular case ordinarily requires reference to matters outside the pleadings, it is not generally amenable to resolution on demurrer where review is limited to the complaint alone. (*Cervantes*, at p. 1276.) Here, the SAC adequately alleges facts showing the potential applicability of equitable tolling. At the demurrer stage of this case, because there is no evidence to support a finding that equitable tolling cannot apply to bar the SAC's causes of action, the trial court erred by sustaining NASSCO's demurrer.

None of the cases cited by NASSCO persuades us to reach a contrary conclusion. In support of its position, NASSCO relies primarily on *Arnold v. United States* (9th Cir. 1987) 816 F.2d 1306 (*Arnold*), in which the plaintiff alleged both federal and state claims arising out of an incident on September 23, 1981, during which her supervisor allegedly fondled her knees, blocked the door to prevent her from leaving his office, held her close to him, and kissed and fondled her. (*Id.* at p. 1307.) Without specifically addressing the applicability of all three elements of California's doctrine of equitable tolling to the plaintiff's state tort claims, *Arnold* focused solely on the second element and reasoned that because the plaintiff's federal Title VII claim and

20

her state tort claims arose from distinct "wrongs," equitable tolling did not apply to preclude the application of California's statute of limitations for her state tort claims. (*Id.* at pp. 1312–1313.) *Arnold* stated, in a conclusory manner: "Although sexual harassment may be redressed through a claim brought under Title VII [citation], the wrong underlying Arnold's Title VII claim is distinct from that underlying her state-law tort claims. In her state-law claims Arnold seeks to vindicate not her right to be free from discrimination in the workplace, but rather her right to be free from ' "bodily or emotional injury caused by another person." ' [Citations.] Indeed, it is precisely because these wrongs are different that Arnold's state-law claims are not precluded by Title VII. [Citation.]" (*Ibid.*) In so holding, *Arnold* apparently interpreted the term "wrong" as referring to the legal theory for recovery for an injury, rather than the underlying facts of the incident resulting in that injury.

In applying the second element of California's three-part test for equitable tolling, *Arnold* did not acknowledge, much less apply, *Collier*'s explanation of that element, which the California Supreme Court and other California courts of appeal have subsequently adopted and applied. (See, e.g., *McDonald*, *supra*, 45 Cal.4th at p. 102, fn. 2 ["*Collier* [has] accurately described [the] requirements [for application of the doctrine of equitable tolling] in more detail"]; *Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 598–599; *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1504; *Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1100; *Structural Steel Fabricators, Inc. v. City of Orange* (1995) 40 Cal.App.4th 459, 465.) As discussed above, *Collier* stated that the second element requires that "*the facts* of the two claims be identical or at least so similar that the defendant's investigation of the first claim will

21

put him in a position to fairly defend the second." (*Collier*, *supra*, 142 Cal.App.3d at p. 925, italics added.) *Collier* continued, "So long as the two claims are *based on essentially the same set of facts* timely investigation of the first claim should put the defendant in position to appropriately defend the second [claim]." (*Ibid.*, italics added.) Accordingly, the second element for equitable tolling focuses on the *underlying facts* of the two claims and *not*, as *Arnold* apparently presumed, on the legal theories for recovery for an injury.

Further, six years after *Arnold*, the Ninth Circuit Court of Appeals in *Cervantes* distinguished its case from *Arnold* and, unlike *Arnold*, considered all three elements of *Collier*'s test for application of equitable tolling. *Cervantes* noted: "[I]n *Arnold*, the plaintiff failed the three-part equitable tolling test because her federal 'discrimination' claim was so obviously distinct from her state-law 'personal injury' claims. There is no such obvious distinction between Cervantes' state and federal claims, both of which involve his unlawful termination."[6] (*Cervantes*, *supra*, 5 F.3d at p. 1277, fn. 4.) More importantly, in addition to distinguishing its case from *Arnold*, *Cervantes* discussed the three-part test set forth in *Collier* and, in particular, quoted *Collier*'s detailed description of the second element. (*Id.* at p. 1276.) *Cervantes* further held: "Application of the three-part test is *mandatory*." (*Id.* at pp. 1275–1276, italics added.) Accordingly, *Cervantes* rejected the federal district court's dismissal of the plaintiff's action after it found that the doctrine of equitable tolling did not apply based solely on a " 'threshold

---

6    Contrary to *Cervantes*'s implication that *Arnold* applied the "three-part" equitable tolling test, our reading of *Arnold* shows that it focused solely on the second element of that test and, in so doing, incorrectly interpreted and applied that element as discussed above. (*Arnold*, *supra*, 816 F.2d at pp. 1312–1313.)

inquiry' into the similarity of the two claims." (*Id.* at p. 1275.) Because *Arnold* did not apply all of the elements of the mandatory three-part test for equitable tolling and appears to have misunderstood and/or misapplied the second element, we decline to adopt its reasoning and conclude, contrary to NASSCO's argument, that the trial court improperly relied on *Arnold* in support of its order sustaining its demurrer.

Further, the circumstances in *Cervantes*, rather than those in *Arnold*, are more apposite to this case. In *Cervantes*, the plaintiff's first claim was a state Civil Service Commission administrative claim for wrongful termination. (*Cervantes*, *supra*, 5 F.3d at p. 1274.) When that claim was unsuccessful, he filed a federal action under 42 U.S.C. § 1983 for violation of his civil rights based on false accusations made against him by the individual defendants that resulted in his alleged wrongful termination by the defendant employer. (*Cervantes*, at p. 1274.) In holding that the federal district court erred by sustaining the defendants' Federal Rules of Civil Procedure, rule 12(b)(6) motion (i.e., a demurrer) to the plaintiff's federal action, *Cervantes* concluded that the *underlying facts* of the plaintiff's two claims were the *same* (i.e., his loss of employment). (*Id.* at p. 1277.) The court stated: "*Loss of employment* is the major injury alleged in his complaint . . . ." (*Ibid.*, italics added.) *Cervantes* held, in effect, that for equitable tolling to apply, the first claim did not have to allege a violation of the plaintiff's federal civil rights, but rather, only that he had sustained an injury, i.e., termination of his employment, arising out of the same underlying facts. (*Id.* at pp. 1276–1277.)

Significantly, *Cervantes* stated: "Under California's equitable tolling test, 'similarity' is less a legal conclusion and more *a factual exploration* of the contentions and evidence relevant to each claim. As such, 'similarity' is

23

*not easily resolved as a matter of law, without receiving evidence."* (*Cervantes, supra*, 5 F.3d at p. 1276, italics added.) The court further observed: "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." (*Ibid.*) Based on its review of the plaintiff's federal complaint, *Cervantes* reversed the district court's dismissal of the plaintiff's action, finding that the allegations of the complaint were sufficient to show "the *potential* applicability of the equitable tolling doctrine." (*Id.* at p. 1277.) Like the plaintiff in *Cervantes*, Ramos alleged during the grievance process his wrongful loss of employment. The allegations of the SAC were sufficient to show the potential applicability of equitable tolling. Thus, the trial court erred by sustaining NASSCO's demurrer to the SAC.[7] In so holding, we conclude only that at the demurrer stage, the SAC's allegations were sufficient to show the potential applicability of equitable tolling. We express no view as to whether equitable tolling should be applied in this case. When the trial court has a factual record on further proceedings, it may, or may not, find that equitable tolling applies.

---

[7] In support of its position on appeal, NASSCO's brief repeatedly cites to a concurring opinion in *Cervantes* without attributing it as such. In that concurring opinion, Circuit Judge Farris wrote: "If the wrongs are not distinct, and the plaintiff merely pursues one of several potential legal remedies, tolling applies." (*Cervantes, supra*, 5 F.3d at p. 1278 [conc. opn. of Farris, J.].) Based on that misleading citation, NASSCO erroneously asserts that the "threshold question" for application of equitable tolling is "whether two claims seek to remedy distinct wrongs." We do not read *Cervantes* as so holding and decline to adopt that proffered interpretation of the doctrine of equitable tolling.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions that the superior court vacate its order sustaining the demurrer and issue a new order overruling the demurrer. Ramos is entitled to costs on appeal.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.